[Crim. No. 1192.   In Bank.—April 5, 1905.]

## THE PEOPLE, Respondent, v. JOSEPH MURPHY, Appellant.

CRIMINAL LAW—MURDER—CONSPIRACY OF ESCAPED CONVICTS—BIAS OF JURORS—OPINION BASED ON PUBLIC RUMOR.—Upon the trial of a charge of murder against one of several convicts who escaped from the state prison, where the homicide was committed by another convict in taking the life of one of the guards, and the conviction of the defendant must rest upon an unlawful conspiracy of the convicts, in which the defendant was engaged, to escape from the state prison, in the attempt to carry out which the murder was committed, jurors who testified that they had an opinion that there must have been a conspiracy to escape, and that the killing was done in pursuance of it, which opinion was based on common rumor and published statements, but did not include an opinion as to defendant's guilt or participation in the conspiracy, and that they could act fairly and impartially in the case, are not disqualified by reason of such opinion.

ID.—DISTRUST OF TESTIMONY OF CONVICT—JUROR NOT DISQUALIFIED.— The statement of a juror that he would take the testimony of a

convict with distrust, that he did not believe that convicts are as apt to tell the truth as free men, but that he had no prejudice toward a convict, and would believe some of them under oath, and would judge of the value of a convict's testimony by his manner of giving his evidence and the surrounding circumstances, and would weigh it as he would that of a free man, would not disqualify the juror.

ID.—EVIDENCE—RES GESTÆ—POSSESSION OF DYNAMITE BY CONSPIRATORS —QUESTION FOR JURY.—Evidence was admissible to prove as part of the *res gestæ* that while the conspiracy of the escaping convicts was in progress one of them had dynamite in his possession. The question whether there was a conspiracy, and whether the person having the dynamite was one of the conspirators, was for the jury, under the evidence and instructions of the court.

ID.—INADMISSIBLE EVIDENCE—CONDUCT OF DEFENDANT IN PRISON.— Evidence was properly excluded to show what the conduct of the defendant was while he was in prison, prior to the attempted escape.

ID.—IMPROPER CROSS-EXAMINATION.—A question asked by defendant's counsel on cross-examination of a witness, whether, if he was a "stool-pigeon," he would be in the good graces of the officers, was properly rejected as irrelevant and calling for the conclusion or opinion of the witness.

ID.—IMPEACHMENT OF VERDICT—AFFIDAVITS AS TO DECLARATIONS OF JURORS.—The court did not err in refusing to consider affidavits as to the declarations of jurors to defeat the verdict in a case where their own affidavits are not permissible by statute for that purpose.

ID.—INSTRUCTIONS—REASONABLE DOUBT.—Where the court has elsewhere clearly and fully instructed the jury upon the question of reasonable doubt, and the degree of evidence necessary to a conviction, they could not be misled by an instruction that it was their duty to convict, if the testimony is sufficient to convince them "as reasonable men beyond a reasonable doubt, that the defendant did commit the act charged, although the fact may be surrounded in a degree by a doubt." The doubt last referred to is not a reasonable doubt.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. E. C. Hart, Judge.

The facts are stated in the opinion.

Charles B. Harris, and John D. Moynahan, for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy Attorney-General, for Respondent.

COOPER, C.—Defendant was convicted of murder, and prosecutes this appeal from the judgment and order denying his motion for a new trial.

He was one of several convicts who escaped from the state prison at Folsom on the morning of July 27, 1903. Most of the convicts engaged in the escape were armed, either with knives, razors, or dynamite. In the very beginning of the outbreak, and during the first attack or rush into the captain's office, Cotter, one of the guards, was stabbed by one Andy Myers, a fellow-convict, and died from the wounds so received.

Defendant was convicted upon the theory that he was engaged in a conspiracy to unlawfully escape from the prison, and that the life of Cotter was taken by a fellow-conspirator while all were engaged in the unlawful attempt to consummate and carry out such conspiracy. It is not claimed that the evidence was insufficient to justify the verdict, but certain errors are claimed in denying challenges to jurors, in sustaining or overruling objections to evidence, and in giving or refusing instructions. We will discuss those deemed most plausible.

1. The claim is made that the court erred in denying defendants challenges to the jurors Herzog and Kimball, made upon the ground of the existence of a state of mind on the part of the said jurors in reference to the case which would prevent them from acting with entire impartiality and without prejudice to the substantial rights of the defendant. The jurors each testified in his examination to the effect that he had an opinion that there must have been an agreement or conspiracy in regard to the escape; that the killing was done while carrying out such conspiracy, and that it would take evidence to remove such opinion. It appeared from their examination that the opinions of the jurors were founded upon common rumor and statements in the public journals. They had no opinion as to the guilt or innocence of the defendant, nor as to whether or not he was engaged in the conspiracy. Each testified that he could and would, notwithstanding such opinion, act impartially and fairly in the case. Such opinions did not disqualify the jurors. Any man of sufficient intelligence to be a juror would, after reading in the newspapers of the break and escape, be of the opinion that there

was some agreement or concert of action among the convicts engaged in the escape. This would no more disqualify a juror .than the belief or opinion that Cotter had been killed by some one, or that there was such a state prison as Folsom. The juror Kimball testified that he would take the testimony of a convict with distrust; that he did not believe that convicts are as apt to tell the truth as free men.. He said that he had no feeling of prejudice toward a convict, that he would believe some of them under oath, that he would judge of the value of the testimony of such convict by his manner of giving his evidence and the surrounding circumstances, and would weigh it as he would that of a free man. This would not disqualify the juror. The fact that the circumstances and surroundings of a witness would to a greater or less degree affect his credibility is well known to every man of .sufficient intelligence to act as a juror. The. code provides that a witness may be impeached by showing that he has been convicted of a felony. If the fact that a witness has been convicted of a felony would not tend to cause his testimony to be distrusted, then the provision of the code as to impeaching a witness by the record of such conviction would be to no purpose. The court should be careful to see that all of a defendant's rights are protected, and that he should not be tried by a juror who is biased or prejudiced against him, or who has a positive opinion as to his guilt based upon the statement of eye-witnesses or facts within the knowledge of the juror; but a general opinion upon some abstract proposition, in accordance with reason and experience, is not sufficient ground to justify the court in excusing a juror.

2. The next claim is that it was error for the court to allow the witness Klenzendorf to testify that after the convicts came out of the captain's office, and after Cotter had received the wound, that one Roberts joined the procession of convicts, and that Roberts had dynamite in his possession.

We think the evidence was properly admitted as a part of the *res gestæ*. The break at the captain's office, the stabbing of Cotter, the movement through the back gate and on to the armory occupied only a few seconds. It was a desperate and daring attempt, and all the acts done on the prison grounds were done very quickly. The conspiracy had not been ended

and completed. It was then and there being actively ex-
ecuted by defendant and his fellow-convicts. During the
existence of the conspiracy, and while it was being executed,
the acts and declarations of each conspirator were admissible
as evidence against his co-conspirator. Of course, the ques-
tions as to whether or not there was a conspiracy, and whether
or not Roberts was one of the conspirators, was for the jury,
under the evidence and instructions of the court.

3. It was not error for the court to sustain the objection
of the district attorney to the question asked of the witness
Klenzendorf as to whether defendant was a good prisoner
and what his conduct had been in the prison. Defendant
could not, as a matter of defense, call to his assistance the
fact that he had been good at certain times or while in
prison. Many convicts have been good while in prison who
were very bad out of prison. In all cases where a defendant
is allowed to prove his character for peace and quiet, it must
be done by proving general reputation in the community or
communities where he has lived.

4. It was not error to sustain the objection to the ques-
tion asked by defendant's attorney of the witness Harris in
cross-examination, "Well, if you were a 'stool-pigeon,' you
would be in the very good graces of the officers, would you
not?"

It asked for the conclusion of the witness predicated upon
the fact that he was a "stool-pigeon." It had not been proven
that the witness was a "stool-pigeon," and if it had been,
the question was wholly irrelevant, and called for the opinion
of the witness as to the effect of being a "stool-pigeon." It
would serve no useful purpose to discuss the various other
rulings as to questions and answers of witnesses. They
nearly all relate to conversations, acts, and declarations made
by the convicts engaged in the escape, and the court con-
fined the testimony to what was said and done on the prison
grounds and while the escape was being carried out.

5. The court did not err in refusing to consider the affi-
davits offered as to declarations made after the verdict by
certain jurors. It has long been the rule in this state that
a juror cannot be allowed by his own testimony or declara-
tions to impeach and defeat his verdict, except in a case
authorized by statute. (*People* v. *Baker,* 1 Cal. 404; *People*

v. *Gray,* 61 Cal. 183;[1] *People* v. *Holmes,* 118 Cal. 448.)
If he cannot do so directly, he cannot do so indirectly by
declarations to others, who in turn make affidavit as to such
declarations. (*Siemsen* v. *Oakland etc. Elec. Ry.,* 134 Cal.
494; *People* v. *Dobbins,* 138 Cal. 698.)

6. It is earnestly urged that the court erred in giving the
following portion of instruction sixteen offered by the prose-
cution: "If, under the foregoing rules, the testimony in this
case is sufficient to convince you, as reasonable men, beyond
a reasonable doubt, that the defendant did commit the act
charged, although the fact may be surrounded, in a degree,
by a doubt, then I charge you that it is your duty to
convict."

The instruction is not very clear, but we do not think it
could have misled the jury. The doubt referred to in the
latter part of the instruction was not a reasonable doubt.
The court in other parts of its charge fully instructed the
jury as to the doctrine of reasonable doubt in the language
of Chief Justice Shaw in the Webster case.

The court elsewhere instructed the jury: "If, therefore,
any one or any number of you, after deliberating upon all
the evidence in this case, shall be of the opinion that the de-
fendant has not been proven to be guilty by the evidence in
this case to a moral certainty and beyond every reasonable
doubt, those entertaining that opinion should vote in favor
of a verdict of not guilty, and should so adhere to their
opinion until convinced beyond all reasonable doubt that
they are wrong." And again: "You are instructed that
mere probabilities are not sufficient to warrant a conviction,
nor is it sufficient that the greater weight or preponderance of
the evidence supports the allegations of the information, nor
is it sufficient that upon the doctrine of chances it is more
probable that the defendant is guilty than that he is innocent
to warrant a conviction. The defendant must be proven to
be guilty so clearly and conclusively that there is no reason-
able theory upon which he is innocent when all the evidence
is considered together."

The instruction, in the identical language here, was given
in *People* v. *Anthony* and approved by this court. (*People*
v. *Anthony,* 56 Cal. 400.) We find no error as to other in-

[1] 44 Am. Rep. 549.

structions complained of. The court appears to have fully and fairly instructed the jury upon every phase of the case. It follows that the judgment and order must be affirmed.

Gray, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

> Henshaw, J., Shaw, J.,      Angellotti, J.,
> Van Dyke, J., Lorigan, J.,    Beatty, C. J.