[Crim. No. 205.  First Appellate District.—March 16, 1910.]

## THE PEOPLE, Respondent, v. BENJAMIN E. LEE, Appellant.

CRIMINAL LAW—MURDER—SUPPORT OF VERDICT FOR MANSLAUGHTER—
CONFLICTING EVIDENCE—PROVINCE OF JURY—REVIEW UPON APPEAL.
When a defendant charged with murder was found guilty of man-
slaughter, and there is testimony in the record amply sufficient
to support the verdict, the fact that the evidence was conflicting
presented a question solely for the jury. It is not the province
of this court to pass upon conflicting evidence where it is suffi-
cient in substance to support the verdict.

ID.—EVIDENCE OF VENUE.—The evidence of venue is sufficient if it is
shown by the evidence, taken all together, that the crime was com-
mitted in the county where the venue is laid.

ID.—TESTIMONY OF POLICE OFFICER—IMPROPER CROSS-EXAMINATION—
STATEMENT BY DECEASED.—Where in the testimony in chief of a
police officer there was no allusion to the deceased, his cross-exam-
ination in reference to a statement made by the deceased in the
interest of the defendant was properly disallowed.

ID.—DYING DECLARATION OF DECEASED.—If the deceased had made a
dying statement favorable to the defendant, which was part of
the *res gestae*, the defendant might prove it independently; but he
could not prove it by improper cross-examination. He did not call
the officer, as his own witness, to prove such declaration.

ID.—WITNESS FOR DEFENDANT—DECLARATION NOT SHOWN TO BE DYING
OR PART OF RES GESTAE.—When a witness was called to prove a state-
ment by the deceased after he had been placed under arrest, which
was not shown to be a dying statement, or part of the *res gestae*,
it was properly excluded as not appearing to be material or rele-
vant. The mere fact that the witness heard deceased make a
statement of the trouble is too indefinite to show that it was ad-
missible or would throw any light upon the case.

ID.—INSTRUCTION AS TO MANSLAUGHTER—INVOLUNTARY MANSLAUGHTER.
—LAW OF SELF-DEFENSE NOT QUALIFIED.—An instruction as to man-
slaughter given in the language of section 192 of the Penal Code,
though it might well have omitted the law of involuntary manslaugh-
ter, yet was not misleading, where such instruction was not so given
as to qualify the law of self-defense, and other instructions were
fully given as to the right of self-defense and the right of defend-
ant to act on appearances.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco, and from an order denying
a new trial. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

Wm. H. H. Hart, and Joseph A. Brown, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

COOPER, P. J.—The defendant was charged by the information with the crime of murder, and a verdict returned finding him guilty of manslaughter. He was thereupon sentenced to a term of five years in the state prison. He prosecutes this appeal from the judgment and from the order denying his motion for a new trial.

It is claimed that the evidence is insufficient to support the verdict, and we have carefully examined the same, and in our opinion find it sufficient.

The evidence of the witness Lloyd is to the effect that the defendant upon meeting deceased, with whom he was not on good terms, called him a vile name and about the same instant aimed his umbrella at him, hitting him in the eye with it, thus inflicting the wound that caused his death; that at the time of the assault the deceased had not made any hostile demonstration or any attempt to injure defendant. Defendant's counsel, in his brief, claims that the version of the matter as given by Lloyd was improbable and in contradiction of the other testimony in the record. This was a question solely for the jury, and it is not our province to pass upon the evidence, where it is conflicting and where it is sufficient in substance to support the verdict.

The evidence as to the venue is sufficient. The witnesses referred to the restaurant near which the difficulty occurred as being next to Laib's saloon on the west side of Fillmore street in the city and county of San Francisco. The deceased was taken to the Scobie Hospital in the city and county of San Francisco, where he died. It is sufficient if it is shown by the evidence, taken all together, that the crime was committed in the county where the venue is laid.

One Bell was called as a witness for the prosecution, and testified that he was a police officer, and that on the evening of the difficulty and after he had heard of it he saw the defendant. He was then cross-examined, and at near the con-

13 Cal. App.—4

clusion of the cross-examination he was asked by defendant's counsel: "Q. Did McCarthy make any statement about he did not want to prosecute anybody—about it being his own fault?" The question was objected to as being irrelevant and incompetent and not proper cross-examination, and the court sustained the objection. The ruling was correct. The question was not proper cross-examination as the witness had not even mentioned the name of McCarthy in his direct examination. If the deceased had made a dying statement, or a statement which was part of the *res gestae,* the defendant no doubt would have been allowed to prove it, but he could not prove such a statement by a cross-examination entirely outside of any statement made by the witness in direct examination. The witness was not called by the defendant as his own witness, nor questioned in any way or manner in regard to the matter.

One Mitchell was called by the defendant as his own witness, and testified that he was a police officer; that he was present shortly after McCarthy, the deceased, had been placed under arrest by officer Bell. He was then asked if he heard deceased make any statement at the time about the encounter. The witness answered "Yes, sir." The district attorney then, after the answer had been given and was of record, objected to the question upon the ground that it was immaterial and irrelevant, and the court sustained the objection. No motion was made to strike out the answer, and it was not stricken out. No further question was asked as to the particular time of the statement, or whether it was a dying statement, or was so closely connected in time with the difficulty as to be part of the *res gestae.* The question as asked was too indefinite, and was not pointed to any fact which would show that the ruling was prejudicial. It should have been asked with sufficient statement of particulars to show that defendant was entitled to the statement. The mere fact that the witness heard deceased make a statement after the trouble is too indefinite to show that the statement was admissible or that it would throw any light upon the case. It is perfectly consistent with the question asked to conclude that the statement was a mere narrative of a past transaction. It was not shown by the question that the statement desired was contemporaneous with the transac-

tion or within so short a time afterward as to preclude the idea of deliberate design.

It is argued that the court erred in instructing the jury as follows: "Manslaughter is not murder. It is the unlawful killing of a human being without malice. It is of two kinds; voluntary, that is, upon a sudden quarrel or heat of passion; involuntary, in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." The instruction is a literal copy of section 192 of the Penal Code. The portion of the section defining involuntary manslaughter might well have been omitted, but it could not have misled the jury as they were fully instructed in other portions of the charge as to the right of self-defense, and the right of a defendant to act upon appearances.

The case of *People* v. *Thompson,* 145 Cal. 217, [79 Pac. 435], is not in point. In that case the defendant's requested instruction related to the right of defendant to defend himself when in apparent danger of death or great bodily harm, and that "if defendant acted in self-defense from real and honest convictions as to the character of the danger induced by the existence of reasonable circumstances, he should be acquitted even though he was mistaken as to the extent of the danger." The trial court refused to give the requested instruction, but after giving it in substance added to it: "But the killing must be done with due caution and circumspection and not in a sudden quarrel or heat of passion. For if the killing, under such circumstances, was done with due caution, and circumspection, or was done in a sudden quarrel or heat of passion, then the defendant is guilty of manslaughter." The court very properly held that the effect of the instruction was to tell the jury that a defendant could not kill his adversary in self-defense unless the killing was done with due caution and circumspection, and that the giving of such instruction under the facts of that case was prejudicial error. Further, it clearly appears that the instruction was erroneous in that case, where the jury was told that if the killing was done with due caution and circumspection, or was done in a sudden quarrel or heat of passion, "then the defendant is guilty of manslaughter."

In the case at bar the definition of involuntary manslaughter was not given in connection with any particular instruction or with the right of self-defense. The jury were not told that the defendant in the killing must have acted with due caution and circumspection even if acting in self-defense.

Other instructions are criticised, but the objections to them are not sufficiently plausible to merit further discussion. The court fully and fairly instructed the jury upon every phase of the case. Their verdict was for the least offense included within the information, and recommended the defendant to the mercy of the court. The court accordingly sentenced defendant to one-half the term to which he might have been sentenced under the verdict.

The judgment and order are affirmed.

Hall, J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 13, 1910, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 13, 1910.