[Crim. No. 1192.   Second Appellate District, Division Two.—April 9, 1925.]

## THE PEOPLE, Respondent, v. TRAFFORD HENRY HEAPE, Appellant.

[1] Criminal Law—Larceny—Performance of Representations— Scope of Question Calling for Conversation—Proper Ruling in Sustaining Objection.—In a prosecution for larceny, there was no error in sustaining an objection to a question asked of the complaining witness by defendant's counsel with a view of eliciting a conversation between the complaining witness and defendant, concerning the possession by a law firm of a deed of trust and note which had been delivered by the witness to defendant, which might show that defendant intended to perform the representations made to the witness, where the question was broad enough to include any conversation between the witness and defendant in which mention was made of the deed of trust and note and how they got into the hands of the law firm, regardless of the time when the conversation may have taken place, and broad enough to call for a conversation occurring after defendant's

arrest and long after he had become aware that his right to a sum of money paid to him by the witness was questioned and that he was suspected of larceny.

[2] ID.—STATEMENTS OF DEFENDANT—TIME OF MAKING—WHEN ADMISSIBLE.—Though statements made at any time after the larceny are admissible against the accused to show his felonious intent, they are not admissible in his behalf to show an honest intent unless they were made at or about the time the property was taken, or as a part of the *res gestae*, i. e., instantly upon the property being discovered in his possession or immediately upon the accusation of theft being brought home to his knowledge and before he has had the opportunity to concoct evidence exculpatory of himself. Evidence of statements made by the defendant at any other time is inadmissible in his behalf, such statements being excluded as evidence on behalf of the accused not because they might never contribute to the ascertainment of the truth, but because, if received, they·would most commonly consist of falsehoods fabricated for the occasion, and would mislead oftener than they would enlighten.

[3] ID.—AMBIGUOUS QUESTION—OFFER OF PROOF.—Where the purpose of a question is not obvious from its terms and objection to it is sustained, the party seeking to introduce the evidence should make an offer of what he expects to prove, so that the trial court may determine whether the proposed proof is material and relevant.

[4] ID.—RETURN OF MONEY OR PROPERTY—TIME—SCOPE OF QUESTION. In such prosecution, a question asked on the cross-examination of the complaining witness, "Did he (defendant) ever give you anything in the way of money or property?" was objectionable on the ground that it was of a scope so broad that it included the delivery of any money or property by defendant to the witness after the former's arrest and after he knew that he was charged with larceny.

[5] ID.—EVIDENCE—INDEFINITENESS OF QUESTIONS AS TO TIME—OBJECTIONS PROPERLY SUSTAINED.—In such prosecutions, objections were properly sustained to questions asked on the cross-examination of the complaining witness for the purpose of showing that the witness made unreasonable demands on the defendant, and that the unreasonableness of such demands tended to explain and to excuse defendant's failure to return the money given to him by the witness, where such questions were so general and indefinite as to time that the witness might have answered concerning demands made by him as recently as a date subsequent to the consummation of the crime and after defendant's arrest, or even as recently as some time during the progress of the trial.

2.   See 1 R. C. L. 470; 8 Cal. Jur. 105.

[6] ID.—FRAUDULENT INTENT—EVIDENCE.—In such prosecution, testimony (sought to be given by defendant which was excluded) as to what defendant had done with all of his funds, and claimed to have had a bearing upon the question as to whether he had an intention to defraud the complaining witness at the time when he received the latter's check, was not relevant or material to the issue of fraudulent intent; and the defendant could not have been prejudiced by the exclusion of such testimony where he was permitted to testify that the only reason why he did not proceed with his contract was that certain moneys which his business associate expected to have available for the purpose were not forthcoming.

[7] ID. — LICENSED BROKER — REPRESENTATIONS — EVIDENCE.—In such prosecution, where the complaining witness testified without objection that the defendant represented himself as the possessor of a broker's license, and defendant, when testifying in his own behalf, admitted that he was not a licensed broker, defendant could not have been injured by a ruling sustaining an objection to a question asked by his counsel why he did not have a license, since his reason for failing to secure a license, whatever that reason might have been, could not affect the fact that, though he possessed no license, he knowingly and falsely represented himself to be a licensed broker.

[8] ID.—EXISTENCE OF CORPORATION—REPRESENTATIONS—EVIDENCE.— In such prosecution, where it appeared that when defendant, in the name of a supposed corporation, entered into the contract with the complaining witness, there was no corporation of that name with which defendant had any connection whatever, and that defendant testified that previous to entering into the contract with the complaining witness steps preliminary to the incorporation of such a company were taken by him, an objection to a question why the incorporation was never completed was properly sustained, since defendant's representation was, not that such a corporate being had been conceived, but that it had been actually born into the world of reality.

[9] ID.—TIME OF CONVERSATION.—In such a prosecution, an objection was properly sustained to a question, propounded to an acquaintance of defendant who testified that he had a conversation with the complaining witness two or three months after the expiration of the time within which defendant was to perform his promises to the complaining witness, asking the acquaintance to state the conversation.

[10] ID.—DEFENDANT'S REPUTATION—EVIDENCE.—In such prosecution, where a character witness for the defense testified that he did not know the general reputation of defendant for truth, honesty, and integrity in the community in which he resided, but that in his business relations it was good, the trial court did not err in

refusing to permit the witness to testify further as to defendant's reputation.

[11] ID.—REPUTATION—EVIDENCE.—While it is permissible for an accused, when a particular trait of character is in issue, to show his *general* reputation with regard to such trait, in the community or communities in which he has lived, it is not permissible for him to show what his reputation for such trait is among the members of a particular class of people.

[12] ID.—LARCENY BY TRICK OR FRAUD—EXISTENCE OF FELONIOUS INTENT—TIME—INSTRUCTIONS.—In such a prosecution, a requested instruction that "You are instructed that if defendant had no felonious intent to steal the property at the time he took it, the jury must acquit him, even if you believe he subsequently conceived the intent to appropriate it," considered as an abstract legal proposition, was a correct statement of the law; but the defendant could not have been injured by the refusal to give the same, where in giving its charge the court was at pains to instruct the jury that to constitute larceny by trick, fraud or artifice the accused must have obtained possession of the property "with the felonious intention of stealing it *when he gets possession of it.*"

(1) 16 C. J., p. 636, n. 33.    (2) 16 C. J., p. 575, n. 62.    (3) 16 C. J., p. 851, n. 68.    (4) 16 C. J., p. 852, n. 86.    (5) 16 C. J,. p. 852, n. 86.    (6) 17 C. J., p. 335, n. 9.    (7) 36 C. J., p. 878, n. 60. (8) 36 C. J., p. 888, n. 52.    (9) 40 Cyc., p. 1719, n. 18.    (10) 16 C. J., p. 582, n. 24.    (11) 16 C. J., p. 582, n. 31, p. 583, n. 32. (12) 16 C. J., p. 1063, n. 85.

APPEAL from a judgment of the Superior Court of Los Angeles County.    Carlos S. Hardy, Judge.    Affirmed.

The facts are stated in the opinion of the court.

C. A. Shutt and Arthur C. Fisher for Appellant.

U. S. Webb, Attorney-General, Erwin W. Widney, Deputy Attorney-General, and Hamish B. Eddie for Respondent.

FINLAYSON, P. J.—Defendant was charged with the larceny of $250, the property of one Bruce G. Kingsley.    He was found guilty as charged, and now appeals from the judgment of conviction.

A general outline of the case, as shown by the People's witnesses, sufficient for an understanding of the points to be

11.  See 8 Cal. Jur. 55.

discussed, may be stated thus: On October 3, 1923, Kingsley and the defendant—the latter assuming to act in the name of and for and on behalf of a fictitious corporation designated as the Great Western Builders Inc.—executed a written contract whereby Kingsley agreed to pay $1,000 to the mythical corporation, and that supposititious entity, according to the letter of the contract, agreed (1) to apply the $1,000 to the purchase of a certain lot in the city of Los Angeles and to build a bungalow thereon for Kingsley; (2) to arrange for all such financial aid as might be necessary to carry out the agreement; (3) to complete the building within ninety days, and (4) to secure for Kingsley, within such ninety-day period, a purchaser of the lot with the building thereon who would buy the premises at a price that would net Kingsley a profit of $1,000. There was either no such corporation as the Great Western Builders Inc., or, if there was, defendant had no connection therewith.

Kingsley did not have more than about $250 in ready money available for the purpose of his agreement, and it was therefore agreed between him and defendant that instead of paying the full amount of $1,000 in cash he would give his check for $250 to defendant, and also deliver a certain trust deed which had been executed in Kingsley's favor by certain parties some years previously to secure an indebtedness evidenced by a promissory note upon which the sum of $1,019.19 remained unpaid. Pursuant to the last-mentioned agreement—entered into contemporaneously with the one first mentioned—Kingsley delivered his check for $250 to defendant, payable to the latter's order, and also delivered to him the trust deed and the note secured thereby. Thereupon defendant delivered to Kingsley a written receipt, which recited that the trust deed was to be used by the Great Western Builders Inc. "as collateral security to the extent of not less than $750.00, until such time as Dr. Kingsley shall remit $750.00 in currency, said deed to be thereupon returned to the said Dr. Kingsley immediately." The receipt also recited that the check for $250, with the $750 so to be raised on the trust deed, "shall be taken to apply . . . as payment of the sum of $1,000 referred to" in the first-mentioned agreement.

Upon receiving Kingsley's check for $250, defendant indorsed his name upon it and deposited it to his credit at his bank. The ninety-day period passed within which the Great Western Builders Inc. was to do the things which ostensibly it had undertaken to do, and no attempt was made to build the bungalow or do any of the things which defendant, in the name of the Great Western Builders Inc., had promised should be done with Kingsley's money. It is true that, when testifying as a witness on his own behalf, defendant advanced a specious excuse for his failure to carry out the terms of the agreement with Kingsley, but it is evident that the jury attached no credence to his story, for by its verdict of conviction it impliedly found that defendant intended all the while to convert the $250 to his own use and that he obtained possession of the check by fraud and trickery, i. e., under the false pretense that he would invest the $250 for Kingsley so that the latter, within a period of ninety days, would be repaid the full amount of his investment and also make a profit thereon of 100 per cent.

It is contended that the court erred in its rulings upon objections to certain evidence, and also in refusing certain instructions requested by appellant. We shall consider appellant's points in the order of their presentation.

[1] On his cross-examination the complaining witness, on being asked by defendant's counsel if he knew what had become of the trust deed and the note which he had delivered to defendant to be used as collateral in raising the sum of $750, replied that he had since learned that they had come into the hands of a certain law firm in Los Angeles, but that he did not know how the firm had obtained possession of the documents. Thereupon defendant's counsel propounded this question: "Did you ever have a conversation with Mr. Heape [the defendant] in which you spoke or talked of this trust deed and note, and how it got into these people's hands?" To this question the court sustained an objection interposed by the district attorney. Appellant assigns this as error. We cannot perceive how it was possible for appellant to be injured by the ruling. He was not charged with the theft of the trust deed or of the note secured thereby. He claims that if the question had been answered in the affirmative and had then been followed by a question educing the conversation, it might have been shown

that when he made the contract of October 3, 1923, he had no intention to defraud Kingsley. It is not claimed that anything was said by Kingsley in the course of the conversation which would shed light upon appellant's intention. The claim, as we understand it, is that appellant himself might have said something during the conversation which would tend to show that when he executed the contract in the name of the supposititious corporation he honestly intended to fulfill his promissory representations. At least one flaw in this argument is that the question to which the objection was sustained is broad enough to include any conversation between appellant and Kingsley in which mention was made of the note and trust deed and how they got into the hands of the Los Angeles law firm, regardless of the time when the conversation may have taken place. The question was broad enough to call for a conversation occurring after appellant's arrest and long after he had become aware that his right to the $250 was questioned and that he was suspected of larceny. Anything which he may have said in his own behalf after his arrest, or after his right to the money was first brought into question, would be self-serving and inadmissible. [2] Though statements made at any time after the larceny are admissible *against* the accused to show his felonious intent, they are not admissible in his behalf to show an honest intent unless they were made at or about the time the property was taken, or as a part of the *res gestae*, i. e., instantly upon the property being discovered in his possession or immediately upon the accusation of theft being brought home to his knowledge and before he has had the opportunity to concoct evidence exculpatory of himself. Evidence of statements made by the defendant at any other time is inadmissible in his behalf. (36 C. J., p. 890; 17 R. C. L., pp. 77, 78; *Mason* v. *State*, 171 Ind. 78 [16 Ann. Cas. 1212, 85 N. E. 776].) Such statements are excluded as evidence on behalf of the accused not because they might never contribute to the ascertainment of the truth, but because, if received, they would most commonly consist of falsehoods fabricated for the occasion, and would mislead oftener than they would enlighten. (16 C. J., pp. 636, 637.)

[3] Moreover, no offer was made by appellant to prove by the conversation, if any was had, any specific fact or facts. The purpose of the question, as now stated by appel-

lant, was not obvious from its terms. In such cases the
party seeking to introduce the evidence should make an
offer of what he expects to prove, so that the trial court may
determine whether the proposed proof is material and rele-
vant.

[4] The complaining witness, when testifying on his
direct examination, stated that the $250 represented by the
check which he had given defendant was never returned to
him.    In the course of his cross-examination the witness tes-
tified that he never received any consideration from defend-
ant prior to the latter's arrest.    He also testified that just
previous to defendant's preliminary examination the latter
gave the witness three documents.    What those documents
were does not appear, for at this point in the witness' nar-
rative he was interrupted by an objection interposed by the
district attorney to any evidence as to defendant's acts sub-
sequent to his arrest.    From the colloquy which then ensued
between court and counsel it appears that it was the purpose
of defendant's counsel to show by his client's conduct that
it was not the latter's intention to appropriate the $250 to
his own use in violation of the agreement which had been
made with the complaining witness on October 3, 1923.
Without making any specific ruling upon the objection, the
learned trial judge stated from the bench that the rule in
such cases is that evidence of a defendant's conduct after
his arrest is not admissible in his favor on the question of
intention in taking the property.    There was no intimation
from the court that counsel could not show by his cross-
examination of the complaining witness anything which may
have been said or done by defendant prior to his arrest.
The rule thus announced by the court was as favorable to
appellant as he could rightfully expect.    As we already have
stated, evidence of the acts or declarations of one accused
of larceny done or made after he becomes aware that he is
charged with the theft, and when he has had an opportunity
to concoct a defense, is not admissible in his favor.    After
the court had thus announced the line of demarcation which
delimits such acts and declarations of an accused as are
admissible in his behalf, defendant's counsel propounded to
the complaining witness this question: "Did he [defendant]
*ever* give you anything in the way of money or property?"
The question was objected to by the district attorney upon

the ground that any testimony regarding the return of money subsequent to the ninety-day period referred to in the agreement of October 3, 1923, is incompetent and immaterial. The court sustained the objection. It is of this ruling that appellant now complains. From the tenor of the remarks previously made from the bench, defendant's counsel must have known that he would be allowed to question the witness as to any act done by defendant prior to his arrest and which might tend to shed light upon his intention at the time when he received the check for $250. But notwithstanding the court's painstaking care to enlighten the parties with regard to the proper limits within which all such questions should be confined, defendant's counsel saw fit to ask a question which was of a scope so broad that it included the delivery of any money or property by defendant to Kingsley after the former's arrest and after he knew that he was charged with larceny. For this reason, if for none other, the question was objectionable.

[5] The court sustained objections to each of the following questions propounded to the complaining witness on his cross-examination: "Did you ever have a conversation with Mr. Heape in which you asked for $2,800?" "Did you ever make any demand for any more than $250, or the trust deed?" We are told by appellant's counsel that the purpose of these questions was to show that Kingsley made unreasonable demands upon defendant; wherefore it is argued that if such demands were made their unreasonableness would tend to explain and to excuse defendant's failure to return the $250. The questions were so general and indefinite as to time that the witness might have answered concerning demands made by him as recently as a date subsequent to the consummation of the crime and after defendant's arrest, or even as recently as some time during the progress of the trial. Obviously, no act of omission or commission on appellant's part, no matter what the excuse therefor may have been, could absolve him or justify his crime if it occurred subsequently to the full consummation of the alleged larceny, which, if committed, must have culminated at a time prior to the filing of the complaint with the committing magistrate. Appellant's counsel made no attempt to ask the witness any question which would have directed his attention to a time prior to the date when the alleged larceny, if committed,

must have become a fully consummated and completed offense. It was not error, therefore, to sustain an objection to questions so indefinite and uncertain. (*State* v. *Bailey*, 31 Wash. 89 [71 Pac. 715]. See, also, *People* v. *Machado*, 6 Cal. Unrep. 600 [63 Pac. 66]; *People* v. *Lee*, 13 Cal. App. 48 [108 Pac. 738], and 40 Cyc., p. 2420.) Particularly is this so in view of the trial judge's clear and explicit statement of the rule that evidence of defendant's conduct, or of conversations had with him, occurring subsequently to his arrest is not admissible.

[6] After having testified that he received the check for $250 from Kingsley and that he had deposited it in his bank so as to mingle it with his other funds, defendant, who had taken the stand as a witness in his own behalf, was asked by his counsel on his direct examination to state, not what he had done with the $250, but what he had done with all his funds—the product of moneys which he .had received from time to time in his business transactions. The court, on objection being made by the district attorney and after the witness had commenced to answer the question, refused to permit defendant to testify further along that line. This is now assigned as error, appellant claiming that had he been permitted to testify as to what he had done with all of his funds it would have had a bearing upon the question as to whether he had an intention to defraud Kingsley at the time when he received the latter's check for $250. We fail to perceive how the testimony could have been material or relevant to the issue of fraudulent intent. Moreover, the court expressly announced from the bench, during the ensuing colloquy, that appellant would be permitted to testify as to what resources he had for carrying out his contract with Kingsley and also that he might give the reason why he did not "go ahead" with that contract. Accordingly, defendant testified that the reason why he did not proceed with his contract was that certain moneys which his business associate expected to have available for the purpose were not forthcoming. Having been allowed thus to state what he claimed was his sole reason for failing to perform his promissory representations to Kingsley, we are utterly unable to perceive how he could possibly have been injured by the ruling of which he now complains.

[7]    When the prosecution was putting in its evidence in chief, the prosecuting witness, without any objection from the defense, testified that when defendant was negotiating for the contract of October 3, 1923, the latter represented himself as the possessor of a broker's license, and that subsequently the witness discovered that defendant never had a license.   Defendant, when testifying in his own behalf, admitted that he was not a licensed broker.   He was then asked by his counsel why he did not have a license.   To this question the court sustained an objection.   We do not see how appellant could have been injured by this ruling.   Assuming, for the purpose of the argument, the relevancy and materiality of Kingsley's testimony to the effect that appellant falsely represented himself as the possessor of a broker's license, nevertheless, the falsity of that representation and the fact that appellant must have known it to be false would in nowise be overcome by the fact that appellant may have had some excuse for not procuring a license. His reason for failing to secure a license, whatever that reason may have been, cannot affect the fact that, though he possessed no license, he knowingly and falsely represented himself to be a licensed broker.

[8]    When the prosecution was putting in its case in chief it was shown by the People's witnesses that there never was such an entity as the Great Western Builders Inc., or if there was, that defendant had no connection with it, Defendant, testifying in his own behalf, gave evidence to the effect that preliminary steps were taken by him as early as September of 1923 to incorporate a company to be known as the Great Western Builders Inc., but that the incorporation was never completed.   It seems to be conceded that on October 3, 1923, when appellant, in the name of the Great Western Builders Inc., entered into the contract with Kingsley, there was no corporation of that name with which appellant had any connection whatever.   Having testified that steps preliminary to the incorporation of such a company were taken by him in September, 1923, appellant was then asked by his counsel to state why the incorporation was never completed.   The district attorney objected to the question upon the ground that it was incompetent, irrelevant and immaterial.   The court sustained the objection.   Appellant now contends that the evidence sought to be elicited by the

question was relevant and material to the issue of his alleged fraudulent intent. With this contention we cannot agree. Whatever appellant's purpose may have been respecting the ultimate incorporation of an artificial entity to be known as the Great Western Builders Inc., the fact remains that there was no such corporation at the time when he pretended to be its authorized representative empowered to make a contract for it and in its name, and that he knew that no such corporation existed. His representation was, not that such a corporate being had been conceived, but that it had been actually born into the world of reality.

[9] The defense called to the witness-stand an acquaintance of the defendant, who testified that he had a conversation with Kingsley in the month of March or April of 1924. This was some five or six months subsequent to the execution of the contract with Kingsley, or two or three months after the expiration of the ninety days within which the contract was to be performed, and was subsequent to the time when the crime of larceny must have been fully consummated by appellant—if crime there was. The witness was asked to state his conversation with Kingsley. The question was objected to by the district attorney and the objection was sustained. In this we find no error. No foundation had been laid for the impeachment of Kingsley, and save for some such purpose as that of impeachment, nothing which may have been said by Kingsley after the consummation of the crime could by any possibility be competent evidence for the defense.

[10] A character witness having been called by the defense and having testified that he had known defendant for about two years, the following ensued: "Q. [By Mr. Shutt, defendant's counsel] : I will ask you if you know what the general reputation of the defendant is for truth, honesty and integrity in the community in which he resides, and in his business relations? A. I don't know about the community in which he resides. Q. But in his business relations? A. In his business relations, they are good, as far as I know. Mr. Jordan [the deputy district attorney] : I object to any *further* questions of him as a character witness. [Italics ours.] The Court: Objection sustained. Mr. Shutt: I believe we are entitled to go into that, to show what his reputation is in the business world. The Court:

The only reputation you can show is the reputation in the community in which he resides.''

The court did not err in refusing to permit the witness to testify further as to defendant's reputation. The trait involved in the offense charged against defendant is such that it was proper for him to show, if he could, that he bore a good reputation for honesty and integrity in the community in which he lived. And since the prosecution claimed that the alleged larceny was committed in the course of appellant's business dealings, it doubtless would have been proper to ask the witness to tell, if he could, what appellant's general reputation was in the community in which he lived for honesty and integrity in his business relations. But the question was not so framed. The witness, though disclaiming any knowledge of defendant's general reputation for truth, honesty, and integrity in the community in which he resided, was permitted, nevertheless, to testify that, so far as he knew, defendant's reputation in his business relations was good. What more could appellant ask? **[11]** While it is permissible for an accused, when a particular trait of character is in issue, to show his *general* reputation with re-gard to such trait, in the community or communities in which he has lived, it is not permissible for him to show what his reputation for such trait is among the members of a particular class of people. (16 C. J., pp. 582, 583.) In *State* v. *Brady,* 71 N. J. L. 360 [59 Atl. 6]—a case in which the defendant was charged with the carnal abuse of a young girl—it was held that a question which called for the defendant's reputation ''among his fellow-workmen'' as to his chastity and morality was too narrow, the court saying: ''The defendant was entitled to give evidence as to his reputation in the community in which he lived, for chastity and morality, but not his reputation among a selected number from such community.'' ''When the character of one is in issue it can be shown only by evidence of his general reputation as disclosed by the common speech of his neighbors and members of the community.'' (*Commonwealth* v. *Porter,* 237 Mass. 1 [129 N. E. 298].) ''In all cases where a defendant is allowed to prove his character for peace and quiet, it must be done by proving general reputation in the community or communities where he has lived.'' (*People* v. *Murphy,* 146 Cal. 506 [80 Pac. 709].)

[12] Finally, it is claimed that the court erred in refusing to give the following instruction requested by defendant: "You are instructed that if defendant had no felonious intent to steal the property at the time he took it, the jury must acquit him, even if you believe he subsequently conceived the intent to appropriate it." Considered as an abstract legal proposition, the requested instruction was a correct statement of the law. (*People* v. *Morino,* 85 Cal. 515 [24 Pac. 892]; 15 Cal. Jur., p. 908.) And if we could see that appellant was injured by the court's refusal we doubtless would be constrained to hold that there was ground for a reversal. But upon a consideration of the entire charge to the jury, we think it plain that the refusal to give this particular instruction could not have prejudiced appellant's rights. In giving its charge the court was at pains to instruct the jury that to constitute larceny by trick, fraud, or artifice the accused must have obtained possession of the property "with the felonious intention of stealing it *when he gets possession of it.*" (Italics ours.) From the charge as a whole the jury, in our opinion, could not possibly have failed to understand that it was their duty to acquit unless they believed, beyond a reasonable doubt, that defendant had a felonious intent to steal the property at the time when he took it, and that any subsequently conceived intention to appropriate it would not justify a conviction.

The judgment is affirmed.

Works, J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 9, 1925, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 8, 1925.