[Crim. No. 7939.   Second Dist., Div. Four.   May 24, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. CALVIN HOLLAND, Defendant and Appellant.

Matthews & Stanley, Robert W. Stanley and Al Matthews for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James and Gilbert F. Nelson, Assistant Attorneys General, for Plaintiff and Respondent.

JEFFERSON, J.—In an *information* filed by the District Attorney of Los Angeles County defendant was charged with a violation of Penal Code section 211, robbery. Defendant pleaded not guilty and after a jury trial he was found guilty as charged. His motion for a new trial was denied, proceedings were suspended and defendant was granted probation for three years. Defendant appeals from the judgment (the order granting probation) and from the order denying his motion for a new trial.

The facts material to this appeal viewed favorably to the People are as follows: On the evening of March 3, 1961, prosecutrix Leilani Seals, 16 years of age, left her home about 5:30 in the evening and walked to a Thriftimart supermarket located at the southeast corner of Vermont and Adams Street in the City of Los Angeles for the purpose of cashing two checks given to her by her mother. She cashed the checks and obtained $49.60. While walking from the market, counting the money and preparing to put it into her sweater pocket she noticed defendant, following 2 or 3 feet behind her. She knew him by sight but not by name.

Defendant continued to follow the prosecutrix after she left the market, and, near the entrance to an alley to the parking area behind the market, he approached her from the rear, grabbed her arm and said, "Give me the money." She screamed, grabbed the money from her pocket and tried to

escape from defendant's grip by getting out of the loose fitting bulky sweater which she was wearing. Defendant threw her to the ground, kneeled over her and after a brief struggle, jerked the money from her hand. He rose, walked a few feet away, turned and said, "Come on. Go in the house." He then began to run.

An identification witness, Herman Brown, a construction worker, was walking toward the market when he heard the screams of the prosecutrix across the street and saw her struggling with defendant. He saw defendant throw her to the ground and then saw that defendant "pulled his hand from her real fast and he started walking off." He then heard defendant say, "You had better come on. I am going on." Defendant then walked about 20 feet before he "broke and ran." Mr. Brown testified that someone, unidentified at the trial, chased defendant and that he joined in the chase but was delayed in crossing Adams Street because of heavy traffic. When he finally crossed the street a lady, unidentified at the trial, told him that the fellow who was running "jumped in the back end of a car, laid down, and the car took off with him."

The witness Brown first identified defendant from pictures shown him by the police and later at a police lineup. He stated that there was no doubt in his mind that defendant was the man who wrestled the prosecutrix to the ground and ran away from the area.

Another identifying witness, Paul Watanabe, owned a boarding house near the site where the robbery occurred. The alley where the robbery took place is located at the rear of the boarding house. The witness was in the boarding house when he heard the prosecutrix screaming for help. He ran out of the back door and observed the prosecutrix and defendant in the center of the alley about 9 feet from the street. The prosecutrix was crying and was struggling with defendant. Mr. Watanabe stated he didn't interrupt the affray because he assumed it was a family argument between a sister and brother. During the struggle he heard her say, "Give me my mother's money." He stated defendant then rose, passed within 2 or 3 feet in front of him, told the prosecutrix to "come home," walked about 20 or 30 feet and started running. The witness said that two men chased the defendant who ran around the witness's house and back past him.

This witness, Watanabe, also subsequently identified defendant in a lineup at the police station.

■ Defendant first contends that, although he does not doubt that the girl was robbed and that the witnesses viewed the robbery, the testimony of the prosecutrix identifying defendant as the robber, is inherently improbable and therefore of no effect. He bases this contention on certain acts, omissions and declarations of the prosecutrix made subsequent to the crime.

We have reviewed the record of the actions and statements of the prosecutrix questioned by defendant and deem his claim to be without merit. It would serve no useful purpose to repeat here in full the complicated factual pattern upon which defendant's contention rests, for the implied finding of defendant's identity is sustained, independently of the testimony of the prosecutrix, by the testimony of the two eye-witnesses to the crime. Defendant does not suggest that their testimony was inherently improbable but seeks to attack their credibility by questioning their opportunity and ability to identify defendant. We cannot consider the merits of this assertion, for it is not the function of an appellate court to weigh evidence or question the credibility of witnesses. (*People* v. *Carr,* 170 Cal.App.2d 181, 183 [338 P.2d 479].)

■ As stated in *People* v. *Braun,* 14 Cal.2d 1, 5 [92 P.2d 402] : "It is a familiar rule that in reviewing the correctness of factual determinations, the function of an appellate court is limited to the question whether there is any substantial evidence in the record to support the judgment. To entitle a reviewing court to set aside a jury's finding of guilt, the evidence of identity must be so weak as to constitute practically no evidence at all."

■ Defendant next contends that certain evidence was erroneously excluded by the trial court. Defendant testified that he had a conversation subsequent to his arrest with two officers at the jail. Before defendant was asked to relate the substance of the discussion, the district attorney called for a conference at the bench and determined that defense counsel planned to inquire as to what defendant told the officers. The district attorney objected to such questions concerning the conversation on the grounds that the statements, which were received at the preliminary hearing, were self-serving and were inadmissible because they were not within one of the exceptions to the hearsay rule. Defendant, in substance, took the position, which he now asserts on appeal, that the testi-

mony which he planned to introduce indicated a state of mind incompatible with a consciousness of guilt. The judge sustained the objection, and defendant did not make an offer of proof.

■ Where a question to which an objection is sustained does not itself indicate that the answer will be favorable to the party seeking to introduce testimony, before the ruling will be reviewed on appeal, an offer of what is proposed to be proven first must be made to the trial court so that the reviewing court may determine whether such evidence would have been material and beneficial to the party offering it. (*People* v. *Temple,* 102 Cal.App.2d 270, 279 [227 P.2d 500]; *People* v. *Fredeen,* 101 Cal.App.2d 105, 107-108 [224 P.2d 849].) This general rule is particularly applicable where the question appears to call for hearsay testimony. (See *People* v. *Mangum,* 31 Cal.App.2d 374, 383 [88 P.2d 207].) ■ Since the trial court was given no opportunity to judge the relevancy and materiality of the purported statements the record on appeal does not supply a vehicle for this court to review the merits of defendant's contention. Therefore, it cannot be said that the trial court erred in excluding the testimony concerning defendant's conversation with the investigating officers subsequent to his arrest. (See *People* v. *Heape,* 72 Cal. App. 226, 232-233 [237 P. 66].)

The evidence in this case was substantial and it sustained the verdict. The judgment and order denying a motion for a new trial are affirmed.

Burke, P. J., and Balthis, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 18, 1962.