[Crim. No. 1492. Second Appellate District, Division One.—November 17, 1927.]

THE PEOPLE, Respondent, v. CARROL B. CROSSAN, Appellant.

6

Paul W. Schenck and Leo V. Silverstein for Appellant.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondent.

SHAW, J., *pro tem.*—Appellant was operating an aeroplane, and while it was in the air its engine stopped,

making it necessary for him to land. He came down in the surf at Venice, and as he landed the aeroplane struck and killed two young girls who were in bathing. Thereupon an indictment was found against him in two counts, each of which charged the killing of one of the girls as manslaughter. At the trial he was convicted on both counts, and now appeals from the judgments and from an order denying his motion for a new trial.

Appellant complains that the court wrongly instructed the jury as to the degree of negligence necessary to constitute a case of manslaughter. There was no proof that the operation of the aeroplane at the time and place in question was an unlawful act, or that appellant was operating it in an unlawful manner. The offense of which he was guilty, if any, was therefore involuntary manslaughter of the kind defined in subdivision 2 of section 192 of the Penal Code, as resulting from "the commission of a lawful act which might produce death, . . . without due caution and circumspection."

The court gave the jury instructions defining manslaughter in the language of section 192, and further stated to them:

"In this connection you are further instructed that only the last of these kinds of manslaughter is involved in this case, that is, manslaughter in the commission of a lawful act without due caution and circumspection. Operating an airplane is in itself a lawful act. If you find from all the evidence that the defendant was at the time and place in question operating an airplane, then you must determine (First) whether operating an airplane is an act which might produce death, and (Second) whether the defendant then and there operated an airplane without due caution and circumspection and thereby caused the death of Madeline Jeannette Kupfer and Litizia A. Normandin, or either of them."

The court also gave two instructions relating to the two counts, in identical language, except as to the name of deceased, one of which was as follows:

"If you believe from the evidence beyond a reasonable doubt that the defendant operated an aeroplane within the County of Los Angeles, upon the date charged in the information, without due caution and circumspection, and

as a result of the operation of the aeroplane in such manner defendant's aeroplane collided with the deceased, Madeline Jenette Kupfer, and thereby caused the death of said Madeline Jenette Kupfer, you should find the defendant guilty as charged in Count I of the indictment.''

Appellant criticises these instructions because they do not define the terms ''due caution and circumspection''; and also claims that certain instructions requested by him, in which those words were declared to be equivalent to ''criminal negligence'' and the latter term was defined as ''that degree of negligence which is so gross and so flagrant that it indicates to the minds of the jury a wanton and reckless disregard of the rights of others,'' should have been given. We think both of these contentions are disposed of adversely to appellant by *People* v. *Wilson,* 193 Cal. 512, 518 [226 Pac. 5], *People* v. *Seiler,* 57 Cal. App. 195, 201 [207 Pac. 396], and *People* v. *Anderson,* 58 Cal. App. 267 [208 Pac. 324]. In the Wilson case the supreme court said: '' . . . when a person is doing anything dangerous in itself, or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom, his act or neglect is a criminal act against the person so killed even though his negligence does not amount to a wanton or reckless disregard of human safety or life.''

In the Anderson case, where the defendant was convicted of manslaughter, it is said:

''The court instructed the jury quite fully as to the various elements of the crime of manslaughter and in doing so employed the words 'without due caution and circumspection.' The appellant offered and the court refused to give an instruction attempting to amplify the meaning of the words 'due caution and circumspection.' . . .

''Conceding that this proposed instruction is a correct exposition of the law, it adds nothing to the meaning of the words used by the legislature in defining the offense. the average juror is quite as much enlightened by one as by the other. All the words employed in the expression: 'due caution and circumspection' are in common and daily use and are understood by the average person. 'Caution'

means care to avoid accident or misfortune, but the definition informs us of little more than the meaning accorded to it by mankind in general. . . .

"The instruction of which appellant complains as being inadequate is given in the very words of the statute. 'Negligence,' when so great as to be criminal in character, is stated in the proposed instruction as being the equivalent of want of 'due caution and circumspection.' 'Negligence' is a word that has acquired a highly specialized meaning and whole volumes have been written upon it; but the words 'due caution and circumspection' as used by the trial court have their common and ordinary meaning and no other. When these words are stated to the jury they import to them this common meaning without further amplification. The supreme court in a recent case says: 'From this it is argued that the instruction must be condemned as erroneous. But the legislature has the power to declare what the law shall be on the subject. It has done so by this section. . . . However this may be, it cannot be disputed that error cannot be predicated upon an instruction which states the law as the legislature has fixed it by statute and which is applicable to the case' (*People* v. *Fowler*, 178 Cal. 657, quoting from page 671 [174 Pac. 892, 897]).

"But an attempt to expand upon and define 'due caution and circumspection' would, if successful, be no more when given than a mere 'commonplace'; and it is well settled that giving or refusing a mere 'commonplace' does not constitute reversible error. (*People* v. *Raber*, 168 Cal. 316 [143 Pac. 317].)"

At the trial appellant interposed a challenge to the jury panel on the ground that the jury commissioner appointed for the county of Los Angeles under the provisions of sections 204a and 204e of the Code of Civil Procedure had failed to follow the provisions of section 206 of the same code in making up the jury list. This challenge was denied and he now complains of the ruling as error. Section 206 provides: "The names for such lists shall be selected from the different wards or townships of the respective counties in proportion to the number of inhabitants therein, as nearly as the same can be estimated by the persons making said lists."

It appears from the testimony of the jury commissioner that he made no substantial effort to comply with this provision of the code, his method of selection bearing no discoverable relation to the population of the different wards or townships; but he did express an opinion that the result conformed to the provision above quoted ''sufficiently for all practical purposes.'' In view of his testimony as to the manner of. selection, this opinion cannot be given any weight, but the provision above quoted from section 206 is directory. It is intended merely for the guidance of the person making up the list, and in the absence of some showing of an abuse of discretion by such person, his action should not be disturbed. (*People* v. *Danford,* 14 Cal. App. 442, 448 [112 Pac. 474].)

Section 206 further provides that where sessions of the superior court are held in cities other than the county seat, as in the county of Los Angeles, where a session is held at Long Beach, the names for such list to serve in such outside city shall all be selected from the township in which said city is located, and no names from such township shall be selected to serve for any other part of the county. In this case the trial was held at the county seat and at least two names of persons who resided in Long Beach were drawn for service on the jury, and one of these persons actually served upon the jury. We think this provision of the code must also be regarded as directory, and besides the defendant did not exhaust his peremptory challenges, and could by the use of one of them have removed the Long Beach juror from the panel, if he had any objection to such juror.

A defendant is entitled to a fair and impartial jury, but not to any particular juror nor to a jury from any particular place, and no contention is made here that the jury was not fair and impartial, or that appellant suffered any prejudice as a result of either of the violations of section 206 complained of. All of these matters are fully within the saving grace of section 4½, article VI, of the state constitution. (*Riley* v. *Davis,* 57 Cal. App. 477, 486 [207 Pac. 699].)

Appellant also complains of the action of the court in ordering a view by the jury of the place where the two girls were killed and of certain other places in that vicin-

ity. This order was made on the application of the prosecution, over appellant's objection. To show the place in question, the court appointed one of the deputy district attorneys in charge of the prosecution and offered to appoint also appellant's counsel, but the latter declined to accept the appointment. Objection to the appointment of the deputy district attorney on the ground that he was an interested party was made by appellant and overruled. Under this order the jury were shown not only the place of the killing, but also several other places in that vicinity. As far as we can discover, all of these were places at which facts mentioned in the testimony occurred, and all were within the provisions of section 1119 of the Penal Code, which extends to any place in which any material fact occurred. The matter of a view of the premises is in the discretion of the trial court, and its action will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion. (*People* v. *Pompa*, 192 Cal. 412, 421 [221 Pac. 198].) ■ Appellant does not point out to us anything amounting to an abuse of discretion in this case. We have read the record of the proceedings at the view, and, assuming, without deciding, that it was an irregularity to appoint a deputy district attorney to show to the jury the place in question, we are unable to see that appellant was prejudiced thereby.

■ Just before the time when appellant's aeroplane struck the two girls who were killed, according to the testimony of several eye-witnesses, he was flying his aeroplane southward along the beach, at an elevation variously estimated as from forty to one hundred and fifty feet above the sand. In this position he flew over Sunset pier, rising somewhat as he did so and then coming down, and then flew a distance of several hundred feet to Walters pier, which he barely cleared, and came down in the water a short distance south of Walters pier, there striking the two girls. According to some witnesses his motor was still going when he crossed Sunset pier, but others testified to the contrary. All agreed that it had stopped before he reached Walters pier. Appellant himself was not a witness at the trial, but there were read in evidence, by the prosecution, two statements made by him, in which he claimed that his engine quit working when he was one thousand feet in

the air at a point about midway between Venice and Ocean Park and two hundred feet out over the ocean; that the only safe place to land was on the beach, so, after trying and failing to start his motor, he glided toward Venice; that he saw an apparent open space on the beach .and headed for it, but when he got nearly down saw that there were too many bathers and he would hit someone if he landed there, and then turned out toward the ocean, but the wind threw him against the bathers. Appellant also produced evidence tending to show that if he were at the place he stated when his engine stopped, it was doubtful whether he could have glided back to his flying field before reaching the ground.

The prosecution offered, and the court admitted, a large amount of evidence as to acts of negligent and reckless flying by appellant on other occasions previous to the fatal flight. This was offered and admitted, over objection by appellant on all possible grounds, for the avowed purpose of showing a habit of carelessness on the part of appellant and thus rebutting his claim that he had used due caution and circumspection on the occasion in question. The evidence so admitted was very voluminous, occupying a large part of the eighteen hundred page transcript, and showed that on many previous occasions appellant had flown along the beach at a low altitude, barely clearing the numerous piers in that locality, and on some occasions frightening persons who were fishing on them; that about two months before the homicide, when flying low, he had fallen on the beach in the same vicinity; that he made a practice of flying over the boulevard by his airport at a height below the tops of the lamp-posts thereon, sometimes stirring up the dust on the pavement with his wheels; that he often flew down near the roofs of houses; that on various occasions he swooped down so close to automobiles that the occupants became alarmed; that at an air-meet in Orange County he swooped down over the heads of the crowd while doing stunts, and that a number of police officers went to him, told him they had had complaints of his flying low, and warned him to quit the practice. The question as to the admissibility of this evidence is not altogether free from doubt. In considering it, we must notice the fact that there were numerous eye-witnesses of the fatal occurrence,

who testified to appellant's conduct on that occasion. In *Wallis* v. *Southern Pac. Co.*, 184 Cal. 662 [15 A. L. R. 117, 195 Pac. 408], the supreme court had under consideration a similar question. That was an action for damages for the death of a man who had been struck by a train while driving a wagon over a highway crossing of defendant's railroad. The defendant pleaded contributory negligence, and thus raised the question whether the deceased had stopped, looked, and listened before attempting to cross the track. The trial court admitted evidence that the deceased was in the habit of stopping his wagon at railroad crossings and when necessary going ahead to the track to ascertain if a train was approaching. This ruling was upheld, and in making its decision the supreme court several times called attention to the fact that there were no eye-witnesses of deceased's conduct at the time of the fatal accident, and the testimony in regard to it was entirely circumstantial. Thereupon the court said:

"The law governing this class of evidence is perplexingly inharmonious. The weight of authority, however, seems to uphold its use under the conditions stated, that there is an absence of satisfactory testimony of eye-witnesses as to the fact in controversy, while other decisions and authorities consider it legitimate evidence without such condition. This limitation upon the introduction of such testimony seems rather illogical. If the fact of the existence of habits of caution in a given particular has any legitimate evidentiary weight, the party benefited ought to have the advantage of it for whatever it is worth, even against adverse eye-witnesses; and if the testimony of the eye-witnesses is in his favor, it would be at least a harmless cumulation of evidence to permit testimony of his custom or habit."

The latter part of the language thus quoted is clearly *obiter dictum,* in view of the above-mentioned facts of the case; but the court then went on to discuss the matter further and review a number of authorities, finally referring to "the rule admitting evidence of habit to rebut or support conflicting testimony of eye-witnesses, as adopted in this state." A few months later the case of *Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270 [201 Pac. 599], was decided. That was an action to recover damages for personal injuries suffered by plaintiff in alighting from a street-car of de-

fendant. One of the acts of negligence testified to by plaintiff was that the conductor of the car was sitting down in the car talking to another passenger, when the car stopped for plaintiff to alight. Another witness testified to the same fact. Under these circumstances the court held:

"Evidence as to the previous conduct and habit of the conductor as to sitting down and talking to passengers was improperly received, not only because of the fact that the matter was not in issue, but also because of the fact that his habit was not competent (*Langford* v. *San Diego Electric Ry. Co.*, 174 Cal. 729, 732, 733 [164 Pac. 398]; *Steinberger* v. *California Elec. etc. Co.*, 176 Cal. 386 [168 Pac. 570]), to establish the condition at the time of the accident. We need not here consider the effect of the exception to this general rule considered in *Wallis* v. *Southern Pacific R. R. Co.*, 184 Cal. 662 [15 A. L. R. 117, 195 Pac. 408]; where circumstantial evidence only is relied upon, and there are no eye-witnesses."

We are unable to put any other construction on the language just quoted from the Starr case than that the court intended to withdraw the *dicta* contained in the Wallis case, and limit the inadmissibility of habit evidence to cases where circumstantial evidence only is relied on and there are no eye-witnesses. Neither can we discover any point of view from which the ruling complained of here appears to be without the scope of the decision made in the Starr case. The attempt here was to show, by habit evidence, that appellant, instead of being one thousand feet in the air when his motor stopped, as he claimed, was in fact flying just above the beach—a fact exactly analogous to that involved in the Starr case, and one to which there were many eye-witnesses. Since the Starr case is a deliberate and carefully considered expression of the supreme court on this point, we feel bound to follow it, regardless of any opinion we might otherwise entertain on the matter, and hold that the trial court erred in admitting this habit evidence. The error is unquestionably of so grave a character as to require a reversal. As we have already said, a large part, perhaps exceeding half, of the record is occupied by this evidence, and the impression made on the jury by it must have been such as to bring about a conviction, regardless of any other evidence. The other evidence, while

perhaps sufficient to uphold a conviction, is conflicting both as to the facts and as to the possible inferences to be drawn from them; and we cannot say that appellant would have been convicted upon it alone. There was therefore a miscarriage of justice, calling for a reversal.

 Appellant complains of the ruling by which two police officers were allowed to testify as to their measurement of the amount of gasoline left in the tank of his aeroplane after the accident. We think a sufficient foundation was laid for this testimony. The objections made by appellant go rather to its weight than to its admissibility.

 Witnesses were also permitted, over appellant's objection, to testify as experts that flying with a loose magneto, or with only one gallon of gasoline in the tank, was not safe. There was other evidence tending to prove the existence of both of these conditions on appellant's aeroplane at the time in question. This testimony invaded the province of the jury and should not have been admitted. No doubt expert witnesses should be allowed to testify as to the probable consequences of flying with a loose magneto or a small supply of gasoline, but testimony that such flying was not safe went beyond the scope of expert testimony and covered the ultimate fact which the jury were required to determine. (10 Cal. Jur. 1013, 1014.)

 Evidence was also admitted over appellant's objection regarding the custom of aviators as to inspecting their machines before flying them. This was also error. "The standard of care required of persons under given circumstances is not to be established by proof that others have been in the habit of acting in a certain manner." (*Rudd v. Byrnes*, 156 Cal. 636, 642 [20 Ann. Cas. 124, 26 L. R. A. (N. S.) 134, 105 Pac. 957].)

The judgments and order appealed from are reversed and the case is remanded for a new trial.

Conrey, P. J., and Houser, J. concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 16, 1928.

Seawell, J., Shenk, J., and Curtis, J., dissented.