[Crim No. 2113. Second Appellate District, Division One.—November 30, 1931.]

THE PEOPLE, Respondent, v. ETTORI MARCONI, Appellant.

Max A. Sturges for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

BISHOP, J., *pro tem.*—■ The evidence, though not without its conflicts, is plainly sufficient to support the jury's conclusion that the appellant was guilty of manslaughter. He was shown to have been driving a fairly heavy car, at night, on a curving road, and to have been to the left of the center line when his car collided head on with one in which a Mr. Newhard was riding. Mr. Newhard died as a result of the injuries received. All the elements of the crime of manslaughter were established. (*People* v. *Thomas,* (1922) 58 Cal. App. 308 [208 Pac. 343].)

■ Complaint is made of two rulings of the trial court respecting the receipt of evidence. The manager of the bus company, by which appellant was employed, was asked by appellant's counsel if he had charge of its records regarding accidents. An objection was interposed and sustained, but not until after he had answered affirmatively. Appellant's counsel, without asking a further question, withdrew the witness. No error appears here: First, because every question asked remained answered; secondly, because the subject matter of the inquiry was not the general reputation of the appellant for prudent driving, but his record in a particular service. Without deciding that an investigation into his general reputation would have been proper, we find the limited inquiry would not have been. (*People* v. *Gordan,* (1894) 103 Cal. 568, 574 [37 Pac. 534]; *People* v. *Heape,* (1925) 72 Cal. App. 226, 238 [237 Pac. 66].)

■ Two witnesses related that a second or two before they heard the crash of the fatal accident an unidentified automobile sped past them at a rate of speed variously described as being "very fast", "a high speed machine", and stated to be over forty, possibly seventy miles per hour. The witnesses were some five to six hundred feet from the

scene of the accident, did not identify the speeding auto-
mobile except in the general way that it was a large sedan,
headed toward the accident which occurred in ''about a
second'', no other machine passing meanwhile.  Appellant's
motion to ''exclude'' the testimony of one only of these
witnesses on the ground that it was too remote, was properly
denied.  It was not so remote as to be of no value, as a
matter of law, although it was possible that the car seen
might have turned off a side road and never reached the
place of the accident.  The weight to be given it was for
the jury to decide.

The theory back of part of appellant's objection is
doubtless revealed in the last sentence of this requested
instruction.  ''The maximum speed limit under the law at
the time of the accident and at the place where it occurred
was 40 miles per hour and you are instructed that before
you can find the defendant violated the speed law you
must find from the evidence beyond reasonable doubt that
he was at the time of the accident driving in excess of
40 miles per hour.  You are further instructed that the
testimony as to a rate of speed in excess of 40 miles per
hour at any given point shall not be controlling if you
should find that there was sufficient distance between that
point and the place of accident to permit of a change of
speed in the ordinary course of driving to that of a
lower rate.''  This instruction was properly refused.  The
appellant could have been violating the ''speed law'' al-
though driving outside any residential or business district at
a rate less than forty miles per hour.  (*Ex parte Daniels,*
(1920) 183 Cal. 636, 646 [21 A. L. R. 1172, 192 Pac. 442];
*Davis* v. *Brown,* (1928) 92 Cal. App. 20, 24 [267 Pac.
754]; *Armstrong* v. *Day,* (1930) 103 Cal. App. 465, 471
[284 Pac. 1083].)  Moreover, the concluding sentence
is, in reality, a comment on the inferences to be drawn
from the evidence, an improper subject of a court's instruc-
tion.

Another instruction, requested but not given, would
have advised the jury to acquit the defendant if the negli-
gence of the deceased was the proximate cause of his
death.  The requested instruction is faulty in that it could
be understood as conveying the idea that contributory
negligence is a defense; which it is not.  (*People* v. *McKee,*

(1926) 80 Cal. App. 200 [251 Pac. 675]; *People* v. *Leutholtz,* (1929) 102 Cal. App. 493 [283 Pac. 292]; note in 67 A. L. R. 922.) "The contributory negligence of the person killed, although it may be a defense to an action for a private injury resulting from homicide, does not constitute a defense to a prosecution for homicide. . . . " (29 Cor. Jur. 1155, and authorities there cited.) A careful reading of *People* v. *Black,* (1931) 111 Cal. App. 90 [295 Pac. 87], relied upon by appellant, reveals that case as a further authority in point. The court did admonish the jury that the defendant was not responsible unless the death was caused by his own act or omission, thus more correctly covering the point appellant sought to cover. It was not error to refuse to give the requested instruction.

█ We have examined the several instructions which the court gave, dealing with the question of what constitutes lack of due caution and circumspection, and find no prejudicial error. Some statements, if isolated, would be inaccurate pronouncements of the rule, but taken as a whole, as they must be read (*People* v. *Kelly,* (1925) 70 Cal. App. 519, 524 [234 Pac. 110]), we think the jury was fairly advised. █ Appellant's main ground of complaint with respect to these instructions is that they fail to recognize a difference between civil and criminal negligence. If a distinction is to be made, it will not help the jury to understand it by giving them such an instruction as that requested, that "The charge of manslaughter could be sustained only if the defendant's negligence reached beyond the bounds of lack of skill and foresight, where civil liability begins, to a point where criminal liability is imposed". The instructions given fairly express the rule which now obtains in this state, "that when a person is doing anything dangerous in itself, or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom, his act or neglect is a criminal act against the person so killed even though his negligence does not amount to a wanton or reckless disregard of human safety or life". (*People* v. *Wilson,* (1924) 193 Cal. 512, 518 [226 Pac. 5, 7], *People* v. *Seiler,* (1922)

57 Cal. App. 195 [207 Pac. 396], and *People* v. *Crossan,* (1927) 87 Cal. App. 5 [261 Pac. 531].)

In order to inform the jury as to the unlawful acts, not amounting to felonies, for the commission of which appellant might be found guilty of manslaughter, the court instructed the jury as follows: "That upon all occasions the driver of a vehicle shall drive the same upon the right half of the public highway, unless it is impracticable to travel on such side of the highway, and except when overtaking and passing other vehicles, in which latter case, the vehicle may be driven on the left side of a highway if such left side is clear and unobstructed for at least one hundred yards ahead;

"That any person who knowingly and wilfully drives any vehicle upon a public highway, either without due caution and circumspection, or in such a manner as to endanger the life, limb or property of any person, shall be guilty of reckless driving.

"It shall be unlawful and constitute a misdemeanor for any person to violate any of the foregoing provisions of the California Vehicle Act just read to you, and any act constituting such a violation would be an unlawful act not amounting to a felony." This instruction embodies the substance of sections 121 and 122 of the California Vehicle Act (Stats. 1923, p. 557), as they stood in 1927. The accident, out of which this prosecution grew, took place in December, 1930. In 1929 (Stats. 1929, p. 540), amendments to these sections had taken effect which made the law less drastic. Reckless driving, for example, was changed so that it arose only when one drove "any vehicle upon a highway in so negligent a manner as to indicate either a wilful or a wanton disregard of the safety of persons or property". It will be seen appellant might have been guilty of conduct which would constitute reckless driving under the instruction, but which might be lawful, so far as the restrictions of section 121 are concerned. From this conclusion, however, it does not follow that prejudicial error flows from the giving of the instruction. The field of conduct which was described as reckless driving in 1927, but now lies outside of that misdemeanor, plainly falls within the definition of involuntary manslaughter already discussed, the commission of a lawful act "without due caution and cir-

cumspection''. If the jury convicted appellant because they found that he was guilty of reckless driving, as defined to them, of necessity they found he had so conducted himself that it must be said he had acted without due caution and circumspection. A verdict of guilty would have been obligatory had the correct instruction been given. We must not order a reversal in such a case. (Sec. 4½, art. VI, Const.)

In a further particular the instruction last quoted is archaic. In 1927, driving on the left side of a highway was permitted, under conditions not involved and also ''if such left side is clear and unobstructed for at least one hundred yards ahead''. In 1929 this restriction was relaxed so that driving on the left side was permitted if the highway ahead was clear a sufficient distance to permit two things: (a) The overtaking and passing of an automobile in safety and (b) a return to the right side of the road before coming within one hundred feet of an approaching vehicle. Here again under the facts of this case the giving of the erroneous instruction did not prejudice appellant's rights. There was a conflict in the evidence as to whether or not, at the time of the collision, appellant was on the wrong side of the center line. If the jury predicated their verdict on the violation of section 122, it was because they found a violation had occurred which would be such under either wording of the section. The error presented does not go to the merits of the case. The same comment is called for by a further objection to another instruction touching the same subject, wherein the trial court used the expression: ''or was driving on the wrong side of the highway without *lawful* reason''. The point appellant makes is that ''unlawful'' is not synonymous with ''criminal''. Even so, the distinction is plainly one without a difference, so far as the facts of this case are concerned and could have had no influence on the result. No prejudicial error appears with respect to any instruction.

In support of his motion for a new trial, appellant sought the trial court's order to bring in one of the jurors, that it might be shown that another juror was prejudiced against all bus drivers, and was unable, therefore, to give appellant a fair trial. The trial court declined to take action, a decision of which the appellant is in no position to complain. No attempt was made, so far as is

suggested to us, to ascertain the juror's bias before he was selected. An appellant may not neglect the opportunity given him to guard against unsatisfactory jurors, and then make objection for the first time after an adverse verdict is reached. (*People* v. *Plum*, (1929) 97 Cal. App. 253 [275 Pac. 518].)

After the verdict of guilty was received appellant moved for a new trial and applied for probation. The motion was' denied and thereafter it was ordered ''that proceedings herein be suspended and defendant granted probation for a period of six years''. No imprisonment was fixed as a condition of probation, financial restitution being the only terms imposed. An appeal was taken from the order denying the motion for a new trial, and from the judgment. The respondent takes the position that there was. no judgment, and that the attempted appeal should be dismissed. Appellant apparently acquiesces in the position taken by respondent. In this case every point raised by appellant can be as effectively reviewed on his appeal from the order as it could have been on an appeal from a judgment. We therefore order the appeal from the judgment dismissed. The order denying the motion for a new trial is affirmed.

Conrey, P. J., and Houser, J., concurred.