Kenneth W. GIBB, Plaintiff and Respondent,

v.

Earl N. DORIUS, Director, Driver License Division, State of Utah, Defendant and Appellant.

No. 13626.

Supreme Court of Utah.

March 14, 1975.

Vernon B. Romney, Atty. Gen., M. Reid Russell, Bernard M. Tanner, Asst. Attys. Gen., Salt Lake City, for defendant and appellant.

William K. Reagan, Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Here on appeal is a matter having its genesis in the arrest of plaintiff on a charge of driving under the influence of alcohol. The upshot of an alleged refusal of plaintiff to submit to a blood test was an appeal to the district court, from the decision of the trial examiner, revoking plaintiff's driver's license.

Upon the appeal of the trial examiner's ruling, the trial court found that the State had not provided a "duly authorized laboratory technician" to withdraw blood from plaintiff for the purpose of determining the alcoholic content therein. For that reason, the trial court further found that the plaintiff's alleged refusal to submit to

the blood test was rendered moot, dismissed the action, and restored plaintiff's driving privilege. Defendant appeals, seeks reversal of the trial court, and revocation of plaintiff's driving privilege.

The principal question raised on this appeal is: Did defendant provide, as required by statute, a *duly authorized laboratory technician, to withdraw blood from plaintiff* for the purpose of determining its alcohol content? If defendant did not, does that fact render moot the question of plaintiff's alleged refusal to submit to a blood test, justify dismissal of defendant's charge and restoration of plaintiff's driving privilege? We hold that it does.

The facts pertinent to a resolution of this question are as follows: After the arrest the officer asked plaintiff if he would submit to a chemical test, and, if he would, did he have any preference. Plaintiff answered that he would submit to such test, and that he did not have any preference. Whereupon the officer called the dispatcher to have a technician available at the Salt Lake City and County Jail, for the purpose of withdrawing plaintiff's blood to determine its alcohol content. The alleged refusal was the outcome of a telephonic colloquy between the arresting officer and counsel for plaintiff concerning counsel's request to confer in person with his client prior to the test being given. The officer had left by the time counsel arrived.

The person secured, as a result of the arresting officer's call, as the "duly authorized laboratory technician," was a Mr. Davis. There was evidence he was a chemist with the City-County Health Department, a medical technologist with the United States Navy during World War II, that he held a bachelor of arts degree in bacteriology and chemistry, and that he was authorized by the State Division of Health and was on the approved list with the State Department of Health, and that the State Department of Health monitored him as to his procedure in running blood-alcohol tests. He further testified that his authority to run this particular test was

". . . a letter sent to members of the Bar Association and other persons stating those who are participating and are qualified under the proficiency rating program of the State Division of Health." He also had in his possession a card signed by the Director of the City-County Health Department, dated July 1, 1971, which he said was "The only authorization I have in compliance with that," meaning 41-6-44.-10(f).

The pertinent sections of our statutes, necessary for the decision in this matter follow.

Section 41-6-44.10(f) provides:

> *Only a physician, registered nurse, practical nurse or duly authorized laboratory technician,* acting at the request of a police officer *can withdraw blood for the purpose of determining the alcoholic or drug content therein. . . . any physician, registered nurse, practical nurse or duly authorized laboratory technician,* who, at the direction of a police officer, draws a sample of blood from any person whom the peace officer has reason to believe is driving in violation of this chapter, or hospital or medical facility at which such sample is drawn, shall be immune from any civil or criminal liability arising therefrom, *provided such test is administered according to standard medical practice.* [Emphasis supplied.]

The terms of this statute are an express concession by the legislature that the drawing of blood from a human being is the practice of medicine. This same legislature deems the practice of medicine without a license a felony, Section 58-12-30.

Prior to being licensed in this State, doctors and nurses are required to meet certain educational requirements and are then tested under Title 58. No similar statutory procedure to determine the qualifications and competency for laboratory technicians is provided. The motor vehicle code cannot by indirection determine the standards for the practice of medicine, which are

specifically covered in the Utah Medical Practice Act, Chapter 12, Title 58.

Section 58–12–28(2) includes the term "diagnose" to examine in any manner another person's body, substance, fluid or materials to determine a physical condition. Subsection (4) of 58–12–28 provides that "practice of medicine" includes to diagnose for any human condition by means of instrumentality.

These two subdivisions indicate that the insertion of a needle into the blood stream of a human being to determine the level of alcohol in the blood constitutes the practice of medicine.

Section 58–12–30 provides the exceptions for those who may engage in activities included in the practice of medicine without a license as provided in the act; subsection (7) provides such an exception for nurses who are licensed under other laws of this State to the extent authorized by such license.

Section 58–12–38 provides:

> This chapter is designed solely for the regulation of the practice of medicine . . . and this act shall not change or limit the rights of persons lawfully practicing the other healing arts with respect to the practice of their professions as presently authorized by law, or to the performance of laboratory examinations requested by or under the direction of a person licensed under the provisions of this act.

Section 58–12–40 permits service rendered by a physician's assistant, who is acting under the supervision and direction of a physician licensed in this State to practice medicine and surgery in all branches thereof. This statute provides that the physician shall supervise and direct the activities of the assistant and shall be liable for his acts and omissions.

Significantly, under the Nurse Practice Act, Chapter 31, Title 58, the "practice of practical nursing" means the performance under the direction of a registered nurse, a licensed physician, etc., Section 58–31–4(6). Subsection (5) of this statute defines the "practice of professional nursing" as including the administration of medications and treatments as prescribed by a licensed physician or other licensed medical practitioner.

■ "Duly authorized laboratory technician"[1] must be interpreted as referring to the Utah Medical Practice Act, since the act of withdrawing blood is the practice of medicine. The actual physical introduction of a needle into a human body *goes beyond the performance of a laboratory examination* (Section 58–12–38 requires that such performance be by request or under the direction of a person licensed under Chapter 12, Title 58), and falls within the purview of service rendered by a physician's assistant. Section 58–12–40 requires that the activities of the assistant be under the supervision and direction of a physician and that the latter be liable for the acts and omissions of the former. Within the context of Section 41–6–44.-10(f) the term "duly authorized laboratory technician" means an individual acting under the direction and supervision of a licensed physician. Such a person must "administer the test . . . according to standard medical practice." There is no evidence in the record showing Mr. Davis to be such a person.

While this court is interested in seeing the citizens of this State protected from the dangers inherent in the driver who drinks, in violation of the law; it is also interested in seeing its citizens protected from the dangers inherent in incursions into a person, not duly authorized in accordance with standard medical practice. There are situations, in this area of law enforcement, when blood tests would not only be appropriate, but may be necessary, as the only means of securing analysis. Such situations, almost invariably, occur when a lawfully supervised, sanitary condition exists. That condition was not

1. General Talking Pictures Corp. v. Hyatt, 114 Utah 362, 366, 199 P.2d 147, 148 (1948).

shown to exist at the Salt Lake City and County Jail, in this instance.

This court, on many occasions, has said it is its duty "to give effect, if such can reasonably be done, to every word, clause and sentence of a legislative enactment."[2] It is clear the legislature did not intend to include *any* laboratory technician, because of its specific limitation (duly authorized), the association given the term "duly authorized laboratory technician," to its preceding companions, and the contextual phrase "according to standard medical practice."[3] On other occasions this court has stated that when we review the findings of the trial court we regard all of the evidence with an eye favorable to those findings, including fair inferences which can be drawn from the evidence, and the circumstances.[4] The evidence here clearly sustains the trial court's finding.

■ We conclude that the trial court correctly found that the State did not provide a "duly authorized laboratory technician," for the purpose of withdrawing blood from plaintiff; and that such determination rendered moot the question of plaintiff's refusal to consent to a blood-alcohol test. The other points raised on appeal, not being necessary to this decision, are not decided.

The judgment is affirmed. No costs awarded.

TUCKETT, J., concurs.

HENRIOD, C. J., concurs in the result.

CROCKETT, Justice (dissenting):

I dissent. There are two reasons why the decision is in error: The first, and most important, is that the excuse later given and now urged by the plaintiff for failing to cooperate in determining his degree of intoxication had nothing whatever to do with his reason for refusal at the time of arrest. There is not a shred of evidence that at the time the defendant was requested to cooperate in the testing procedure he made any objection whatsoever on the ground that Mr. Davis was not qualified or authorized to take his blood. What is crystal clear is that his stated desire to have an attorney present was a stalling procedure. As the facts appear, there could have been a licensed physician, or any number of them, standing by to take blood, and this plaintiff's attitude would have been exactly the same. I don't see what good an attorney would have been in such a procedure except to advise him whether to consent or refuse; and he refused.

The testimony of the officer stands undisputed:

Q. And what happened after that?

A. Then he was asked again if he would submit to the test and he told me *he would refuse until his attorney was* present because if we took his blood, *he would lose his license,* but if he refused and we didn't wait for his attorney, *he could get by the refusal hearing.* [Emphasis added.]

In any view of fairness and justice I can see, the foregoing should put the matter at rest. But quite beyond this, the second reason is that, even if the above had had anything to do with his refusal, the said Mr. Davis was in fact qualified and "duly authorized" to take the blood sample. The record shows that Mr. Davis was on the list of those approved by the State Division of Health to administer the blood test, and that he is responsible to and monitored by that state agency as to the procedure in running such tests. As to laboratory technicians, the State does not require licensing, as it does in the case of physicians, nurses and others. Since licensing is not required for laboratory technicians and

---

2. Maw v. Lee, 108 Utah 99, 157 P.2d 585 (1945), and cases there cited.

3. 2A Sutherland, Statutory Construction, 4th Ed., Sec. 47.16, p. 101.

4. Howarth v. Ostergaard, 30 Utah 2d 183, 185, 515 P.2d 442 (1973).

since the courts in construing statutes should strive to give effect to the legislative will wherever possible, it follows that one who is participating in, and who is qualified under, the proficiency rating program of the State Division of Health should be deemed "duly authorized" within the meaning of Section 41–6–44.10(f), U. C.A.1953.

I do not make any argument as to the merits or demerits of taking blood to determine intoxication. It is the law as enacted by our legislature; and it is related to the public safety and welfare. Those who administer it should do so with efficiency and with fairness and impartiality; and the courts should honor the law and support those who enforce it. If this statute and its application are repugnant to anyone's sensibilities, the remedy is to change the law, not to refuse to support its enforcement.

Notwithstanding the belabored ex post facto efforts to justify defendant's conduct by using a later thought of excuse that he did not voice at the time, the undeniable truth is that he did "refuse." Therefore, it is my opinion that he should be held accountable as the law provides.

ELLETT, J., concurs in the views expressed in the dissenting opinion of CROCKETT, J.