**The STATE of Utah, Plaintiff and Respondent,**

v.

**Bert James DURRANT, Defendant and Appellant.**

**No. 14478.**

Supreme Court of Utah.

March 14, 1977.

Kathryn Collard, Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, Noall Wootton, Utah County Atty., Provo, for plaintiff and respondent.

ELLETT, Chief Justice:

The defendant, while operating a motor vehicle during the nighttime upon the highway, collided with a backhoe parked on the opposite side of the highway where a trench was being dug. As a result of the collision one passenger was killed and injury occasioned to others including the defendant.

The defendant was taken to a hospital and was attended by a doctor who directed a medical technologist (an employee of the hospital) to draw a sample of blood for

cross-matching, in the event that a transfusion might be required. The technologist was directed by a police officer to take another blood sample for the purpose of making a blood-alcohol test. The alcoholic content of the blood was .13% by weight.

The defendant was tried and convicted of the crime of automobile homicide, a felony. He appeals claiming two errors: First, he asserts it was error to admit the result of the blood test into evidence; and Second, the court erred in instructing the jury regarding the amount of negligence required in the driving of his motor vehicle in order to make out the elements of the crime with which he was charged.

 As to his first assignment of error the defendant relies solely upon the case of *Gibb v. Dorius.*[1] That case is of small value since it was decided by a divided court, three to two, and two of the three members who favored the decision are no longer with the court. It is also not controlling here for the reason that the extraction of the blood was done at the direction and under the supervision of defendant's doctor. There is therefore no merit to that claim of error.

The next assignment requires a discussion as to the negligence with which the defendant drove and operated his vehicle. He does not contend that he was free from negligence in driving across the center of the highway and crashing into a backhoe on the opposite side of the road. He maintains that the driving must be in the nature of criminal negligence before he can be convicted.

The trial court instructed the jury as follows:

Instruction No. 6 provided:

Under the law of this State any person, while under the influence of intoxicating liquor to a degree which renders him incapable of safely driving a vehicle, who causes the death of another by operating or driving any automobile in a negligent manner on a public highway or street shall be deemed guilty of a felony.

Instruction No. 8 provided:

Negligence is the failure to use ordinary and reasonable care in the management of one's property or person. It is the failure to do what an ordinary and reasonable person would have done under the circumstances, or the doing of what such person would not have done. The fault may lie in acting or in omitting to act.

The propriety or lack thereof of the above instruction depends upon the interpretation to be given to the following sections of our statute:

Section 76–5–201, as enacted L.1973, ch. 196, provides:

(1) A person commits criminal homicide if he intentionally, knowingly, recklessly, or with criminal negligence unlawfully causes the death of another.

(2) Criminal homicide is murder in the first and second degree, manslaughter, or negligent homicide, or automobile homicide.

The relevant provisions of Section 76–5–207, under which defendant was convicted, specify:

(1) Criminal homicide constitutes automobile homicide if the actor, while under the influence of intoxicating liquor, a controlled substance, or any drug, to a degree which renders the actor incapable of safely driving a vehicle, causes the death of another by operating a motor vehicle in a *negligent* manner. [Emphasis added.]

It is to be noticed that the statute only requires that the vehicle be driven in a *negligent* manner. How does that square with Section 76–5–201(1) above where the actor acts with criminal negligence?

Criminal negligence is defined in Ballentine's Law Dictionary as: "The neglect of a legal duty imposed either by statute or by the common law. . . ." Our own court defined the term in *State v. Lingman*[2] as

---

1. 533 P.2d 299 (Utah 1975).

2. *State v. Lingman*, 97 Utah 180, 91 P.2d 457 (1939).

follows: "It must be reckless or in marked disregard for the safety of others. When it does that, it passes the stage of mere malum prohibitum and approaches the unsocial aspects of malum in se."

If a person entrusts the operation of his automobile upon the public highways to a six-year old child, he would certainly be guilty of something "more than a mere thoughtless omission or slight deviation from the norm of prudent conduct." (*State v. Lingman*, above). The same would be true if he entrusted the operation of his car on the public highway to a person who is "under the influence of intoxicating liquor, . . . to a degree which renders the actor incapable of safely driving a vehicle, . . . ." Likewise, it is also applicable if a person drives his own automobile while incapable of doing so because of being under the influence of intoxicating liquor.[3]

The following statement is found in each of the cases cited in footnote 4 below:

"When a person is doing anything dangerous in itself, or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom his act or neglect is a criminal act against the person so killed even though his negligence does not amount to a wanton or reckless disregard of human safety or life."[4]

█ The driving of an automobile upon the highways of this state by one who is so inebriated that he cannot safely operate it is an act which is reckless and in marked disregard of the safety of others.

In the case of *State v. Risk*[5] this court held:

It thus appears that the offense of automobile homicide may be made out by simple negligence in a person's driving while under the influence of intoxicating liquor if as a result thereof he causes the death of another person.

Negligent homicide requires more than carelessness or simple negligence. Automobile homicide does not require that degree of negligence which this Court held to be requisite to constitute negligent homicide as stated in the case of *State v. Lingman*. . . .

Since the element of criminal negligence is present in this case, the question of the propriety of the instruction given by the trial judge to the jury can be looked at in its proper light.

█ Once the question of driving under the influence of liquor is established, the crime of automobile homicide is made out by the death of another person by reason of operating the car in a *negligent manner*.[6] It is to be observed that the mere negligent operation of the automobile by a person so drunk as to render him incapable of driving safely is all that is required.

The court correctly instructed the jury and the defendant was properly convicted. The judgment is affirmed.

CROCKETT, J., and ERNEST F. BALDWIN, Jr., District Judge, concur.

HALL, J., does not participate herein.

MAUGHAN, Justice (dissenting).

The main opinion resorts to a law dictionary for a definition, which is given in the statute. I submit the statute has superior authority. For this reason, and for those following, I dissent.

One of the rules of appellate review is to bring harmony to statutes, if we can. Today, in my view, we fasten into a whole chapter of the criminal code a note of disharmony; which requires one to look else-

---

3. 76–5–207, U.C.A. 1953 (1975 Pocket Supplement).

4. *State v. Lewis*, 91 P.2d 820, 824 (Nev.1939); *People v. Marconi*, 118 Cal.App. 683, 5 P.2d 974, 976 (1931); *People v. Crossan*, 87 Cal.App.

5, 261 P. 531, 533 (1927); *People v. Wilson*, 193 Cal. 512, 226 P. 5 (1924).

5. 520 P.2d 215 (Utah 1974).

6. 76–5–207, U.C.A.1953 (1975 Pocket Supp.).

where for the law which the statute purports to define in its own provisions.

We should be concerned, not only with the impact our decisions have on the participating litigants; we must be concerned with the impact our decisions have on the affairs of those not parties. No uniform body of law can be developed without such a view. We should reverse, and remand for further prosecution, if appropriate.

Defendant, while operating a motor vehicle during the nighttime, collided with a backhoe parked in the opposing lane of traffic in American Fork, Utah. One passenger was killed in the mishap and defendant and two other passengers were injured.

Defendant was taken to American Fork Hospital for treatment. The doctor, who was rendering treatment to defendant, directed a medical technologist (employed by the hospital) to draw a sample of blood for purposes of cross-matching, in the event defendant needed a transfusion. The technologist was directed by the police officer to take another sample for the purpose of making a blood-alcohol test. Defendant sustained a fractured leg in the accident, and he was located in the x-ray room at the time the technologist drew the blood samples. Neither the doctor nor the nurse, attending defendant, were physically present in the x-ray room at the moment the blood was withdrawn.

Based on these facts defendant filed a motion to suppress the result of the blood-alcohol test. Upon an evidentiary hearing, the trial court denied the motion. On appeal defendant contends the trial court erred on the ground the seizure of his blood was not accomplished by one authorized to extract blood, as provided in Sec. 41–6–44.-10. Defendant relies solely on *Gibb v. Dorius*[1] to sustain his argument. Defendant contends Gibb requires a medical technician be *immediately* directed and supervised by a physician, nurse, or practical nurse, at the *moment* the technician extracts the blood;

and the presence of a registered nurse and physician in the next room is insufficient.

In the *Gibb* case we ruled the words "duly authorized laboratory technician" in Sec. 41–6–44.10(f) must be interpreted in reference to Utah Medical Practice Act, Chapt. 12, Title 58. Such an individual must act under the direction and supervision of a licensed physician, and administer the test according to standard medical practice.

Here, a responsible, licensed physician was attending defendant, and directed personnel of the hospital to perform certain acts, in connection with the treatment. Under such circumstances, defendant's blood test was administered by a "duly authorized laboratory technician."

Defendant further contends the trial court erred by instructing the jury the negligence necessary for commission of automobile homicide consisted of ordinary or simple negligence. Instruction No. 8, provided:

Negligence is the failure to use ordinary and reasonable care in the management of one's property or person. It is the failure to do what an ordinary and reasonable person would have done under the circumstances, or the doing of what such person would not have done. The fault may lie in acting or in omitting to act.

Instruction No. 6, provided:

Under the law of this State any person, while under the influence of intoxicating liquor to a degree which renders him incapable of safely driving a vehicle, who causes the death of another by operating or driving any automobile in a negligent manner on a public highway or street shall be deemed guilty of a felony.

Ordinary or simple negligence was all that was necessary to convict one of automobile homicide under prior Utah law as set forth in Sec. 76–30–7.4, as enacted 1957.[2] However, this statute was repealed

---

1. Utah, 533 P.2d 299 (1975).

2. *State v. Johnson*, 12 Utah 2d 220, 364 P.2d 1019 (1961) wherein this court stated ". . . a death caused by simple negligence committed

when the new Utah Criminal Code was enacted in 1973. Defendant was convicted under Part 2, Criminal Homicide, Chapt. 5, Offenses Against the Person.

Section 76–5–201, as enacted L.1973, ch. 196, provides:

(1) A person commits criminal homicide if he intentionally, knowingly, recklessly, or with criminal negligence unlawfully causes the death of another.

(2) Criminal homicide is murder in the first and second degree, manslaughter, or negligent homicide, or automobile homicide.

The relevant provisions of Section 76–5–207, under which defendant was convicted, specify:

(1) Criminal homicide constitutes automobile homicide if the actor, while under the influence of intoxicating liquor, a controlled substance, or any drug, to a degree which renders the actor incapable of safely driving a vehicle, causes the death of another by operating a motor vehicle in a negligent manner.

Under the new statutory scheme automobile homicide is designated one type of criminal homicide. The legislature has confined criminal homicide to those instances where a person "intentionally, knowingly, recklessly, or with criminal negligence unlawfully causes the death of another."

Section 76–2–101 provides:

No person is guilty of an offense unless his conduct is prohibited by law and:

(1) He acts intentionally, knowingly, recklessly or with criminal negligence with respect to each element of the offense as the definition of the offenses requires; or

(2) His acts constitute an offense involving strict liability.

Section 76–2–103, provides:

A person engages in conduct:

. . . . .

by a driver while under the influence of liquor, is an offense within the contemplation of the statute." Also see *State v. Risk*, Utah, 520 P.2d 215 (1974).

(4) With criminal negligence or is criminally negligent with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the actor's standpoint.

Defendant contends the instruction concerning his negligence should have described the conduct required by Sec. 76–2–103(4). This for the reason the term "negligent manner" set forth in 76–5–207(1) means criminal negligence, as required to constitute criminal homicide in Sec. 76–5–201(1).

Defendant's argument is correct. The automobile homicide provision was modeled after Sec. 76–30–7.4, as enacted 1957. However, it was set forth in the new code under Part 2, Criminal Homicide of Chapter 5, wherein, the elements of criminal homicide were set forth without any provision for simple negligence as a basis for liability. The criminal homicide section was patterned after Article 210, A.L.I., Model Penal Code, Proposed Official Draft, May 4, 1972.

A highly relevant comment concerning the criminal homicide article merits review.

While we appreciate the practical value of such special provisions for vehicular homicides, we think they are unnecessary as the Code is drawn. The separation from manslaughter is accomplished by treating negligent homicide as a distinct offense of lower grade. If the evidence does not make out a case of negligence, as negligence is defined in Section 2.02,[3] we see no reason for creating liability for homicide, as distinguished from any traffic offense that is involved. If the evi-

---

**3.** The conduct set forth in § 76–2–103(4) is similar to Article 2, § 2.02(2)(d), A.L.I., Model Penal Code.

dence suffices to establish such a case, the offense is in our view too serious for proper treatment as a misdemeanor. And if conviction of a misdemeanor is all that is believed to be desireable or possible, a prosecution for reckless conduct under Section 201.11 or for a traffic offense should be sufficient. One of the objects of the draft is to avoid proliferation of offenses or distinctions with respect to sentence unsupported by principled rationale.[4]

Under the Model Penal Code, death caused by an intoxicated driver may be manslaughter, a felony of the second degree or negligent homicide, a felony of the third degree. The legislature departed from the provisions of the Model Penal Code and made negligent homicide a Class A misdemeanor and included automobile homicide, a felony of the third degree.

Here lies the gravamen. The automobile homicide section stands in contradiction to the elements of control of the two pertinent chapters of the code, viz., 76–2–101, et seq., and 76–5–201. Reconciliation is possible only by interpreting the term "negligent manner", of 76–5–207(1), to render it in consonance with the conduct described in 76–2–103(4).

We are here presented with a clear illustration of problems which can be encountered in the wake of the adoption of a model code. The basic elements of control, and the rationale of the new code can alter the effect of a prior statute, which was not drawn with the code in mind.

WILKINS, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.

---

**4.** A.L.I., Model Penal Code, Tentative Draft # 9, May 18, 1959, § 201.4, p. 55.