STATE of Utah, Plaintiff and Respondent,

v.

Johnnie M. CHAVEZ, Defendant and Appellant.

No. 16132.

Supreme Court of Utah.

Dec. 31, 1979.

Bruce C. Lubeck of Salt Lake Legal Defenders Assoc., Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

Defendant appeals from a jury verdict of guilty of automobile homicide in violation of Section 76–5–207,[1] and from the judgment entered thereon by the District Court for Salt Lake County. Reversed and remanded for a new trial.

This case involves an automobile collision which occurred at the intersection of State Street and 3900 South Street in Salt Lake City, at approximately 10:45 p. m. on the evening of July 21, 1977. Witnesses who were present at the scene testified that defendant was driving at a high speed, northbound on State Street, but in a 10-foot-wide cement gutter, rather than on the asphalt. The semaphore lights were red, against defendant, but he passed several cars which had stopped for those lights at the intersection and collided with a car driven by Mr. Skollingsberg, who was turning left from the southbound lanes of State Street on the green arrow. Two-year-old Eric Skollingsberg was killed in the collision.

Blood samples were drawn from defendant at 12:14 and again at 12:48 a. m. and subjected to chemical analysis. The chemist who made these analyses testified that defendant's blood contained .19 percent alcohol by weight, in both samples.

Defendant first contends that the Court erred in instructing the jury that the State must prove only simple negligence on the part of defendant as an element of automobile homicide, and in refusing defendant's requested instructions that criminal negligence as defined in Section 76–2–103(4) must be proved. We have previously considered this question in the case of *State v. Durrant*, Utah, 561 P.2d 1056 (1977), in

---

1. All statutory references are to Utah Code Ann., 1953, as amended. Section 76–5–207 provides:

    (1) Criminal homicide constitutes automobile homicide if the actor, while under the influence of intoxicating liquor, a controlled substance, or any drug, to a degree which renders the actor incapable of safely driving a vehicle, causes the death of another by operating a motor vehicle in a negligent manner.

    (2) The presumption established by section 41–6–44(b) of the Utah Motor Vehicle Act, relating to blood alcohol percentages, shall be applicable to this section and any chemical test administered on a defendant with his consent or after his arrest under this section, whether with or against his consent, shall be admissible in accordance with the rules of evidence.

\*   \*   \*   \*   \*   \*

    (4) Automobile homicide is a felony of the third degree.

which this Court ruled that the provisions of Section 76–5–207 require only simple negligence. That ruling was followed in *State v. Anderson*, Utah, 561 P.2d 1061 (1977), and *State v. Wade*, Utah, 572 P.2d 398 (1977). Defendant now urges us to overrule those decisions, as that interpretation produces conflict in the statutes.

Mr. Justice Maughan, in his dissent in *State v. Durrant, supra*, with which this author concurred, recognized that ordinary, or simple negligence was all that was necessary to convict one of automobile homicide under Section 76–30–7.4, the statute as enacted in 1957. But that statute was repealed in 1973, together with the entire Utah Penal Code, at which time the present Utah Criminal Code was enacted. Section 76–2–101 of the Criminal Code now extant, and applicable in this case, provides:

No person is guilty of an offense unless his conduct is prohibited by law and:

(1) He acts intentionally, knowingly, recklessly or with criminal negligence with respect *to each element of the offense* as the definition of the offense requires . . .. [Emphasis added.]

Thus under the new code, negligence is an element of the crime of automobile homicide under Section 76–5–207(1), supra at footnote 1, and that negligence must therefore at least rise to the level of criminal negligence, or defendant is guilty of no offense at all. Criminal negligence is defined in Section 76–2–103:

A person engages in conduct:

\* \* \* \* \* \*

(4) With criminal negligence or is criminally negligent with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of

such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the actor's standpoint.

Instruction No. 18, given by the District Court to the jury in this case, defined negligence as:

Negligence is the failure to do what a reasonable and prudent person would have done under the circumstances or doing what such person under such circumstances would not have done. The fault may lie in acting or omitting to act.

You will note that the person whose conduct we set up as a standard is not the extraordinarily cautious individual nor the exceptionally skillful one, but a person of reasonable and ordinary prudence.

This is a definition of simple negligence, used generally in tort cases, and differs greatly from the quantum of negligence described in Section 76–2–103(4). The latter statute requires proof that defendant's conduct place another at risk; that the risk be substantial and unjustifiable; and that failure to perceive the risk constitute a *gross* deviation from the reasonable man standard. A higher level of culpability is required under Section 76–2–103(4) than that defined in Instruction 18.

In *State v. Wade*, supra, the majority of this Court (Justice Maughan and this author dissenting) was of the opinion that driving while intoxicated amounts to reckless conduct in disregard of the safety and rights of others, and therefore, such recklessness satisfies the requirements of Section 76–2–101. Reckless conduct is defined in Section 76–2–103(3) and requires proof of even higher culpability than criminal negligence.[2] And a homicide caused by reckless

2. Section 76–2–103(3), defines reckless conduct:

Recklessly, or maliciously, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of

such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

The higher culpability in recklessness requires that defendant be aware of but consciously disregard a substantial and unjustifia-

conduct constitutes manslaughter, a second degree felony, under the provisions of Section 76–5–205. Thus the ruling in *Wade*, we respectfully submit, infused confusion into the quantum of culpability required to prove automobile homicide.

We are therefore of the opinion that our previous cases holding that automobile homicide requires only proof of simple negligence under Section 76–5–207 are in error, and are overruled. And we hold that a conviction of automobile homicide requires an instruction on criminal negligence as that term is defined in Section 76–2–103(4), and a determination thereof by the jury. As the Court's Instruction 18 defined simple negligence and not criminal negligence, defendant is entitled to a new trial.

Defendant further argues that the Court erred in denying his motion to dismiss the charges, or alternatively, to suppress the results of the blood tests. The thrust of his argument here is that the chemist, after he finished his analysis, "destroyed" the evidence by allowing the blood samples to remain at room temperature, and that his failure to refrigerate the samples rendered the blood worthless for the purpose of a second analysis on the part of defendant's expert.

The District Court denied defendant's motion to suppress this evidence on the ground that it was not destroyed[3] by the police or prosecution, nor was it intentionally or wilfully destroyed by anyone. Defendant was not denied access to these samples; he made no request for an independent analysis. His motion to suppress this evidence was not made until January 5, 1978—five months after the blood was drawn.

Section 41–6–44.10(f) provides that defendant may have his own physician administer a chemical test in addition to the test administered at the direction of a peace officer, and further, provides that the failure to obtain such additional test shall not affect the admissibility of the results of the State's test. As defendant neither asked his own physician to take a blood sample, nor requested the State to produce its samples for the purpose of an independent test, his argument is without merit, and upon a retrial of defendant, the results of those tests are admissible.

Defendant also asserts that the District Court erred in admitting the results of the blood analysis, in instructing the jury concerning the presumptions of intoxication as set forth in Section 41–6–44(b) 3, and in denying defendant's motion to dismiss, contending that there was little or no evidence that defendant was intoxicated at the time of the collision. These arguments are without merit and we do not discuss them.

Finally, defendant contends that he was not properly sentenced, but in view of our remand, that argument is moot.

MAUGHAN and STEWART, JJ., concur.

CROCKETT, Chief Justice (dissenting):

With due respect to the view set forth in the main opinion, I see this case in quite a different light and cannot agree to the reversal nor join in what seems to me as substantial weakening of the law whose purpose it is to prevent the killing of others in driving while intoxicated.

It will be noted from the instructions given, that the trial court took cognizance of the requirements of the applicable statutes and that the instructions conformed thereto. From those instructions, the jury could not fail to understand that they could not convict the defendant for merely being negligent, nor unless he drove in reckless disregard of the safety of others, *or* so under the influence of intoxicating liquor

---

ble risk to others; criminal negligence, however, requires only that defendant ought to be aware of such risk, but is not. See Section 76–2–103(4) supra.

**3.** The ampules containing these blood samples were introduced as evidence at the trial. They were proffered to defense counsel at the time of the hearing on his motion to suppress, but at that time they were nine months old. The testimony of the chemist at the hearing on the motion to suppress was that no meaningful analysis could be made if the blood were kept unrefrigerated for "a period of time."

that he could not drive safely, and thus was hazarding the safety of others, *plus* the fact that he drove in such an erratic manner as to constitute negligence, i. e., without due care for the safety of others, or otherwise stated, in a careless manner.

The pertinent part of Instruction No. 20 stated:

Before you may find the defendant guilty of Negligent Homicide, the State must prove by evidence which satisfies you beyond a reasonable doubt, each of the following elements:

\* \* \* \* \* \*

2. That Johnny Michael Chavez *drove a vehicle in reckless disregard of the safety of others* ;

3. That said driving proximately caused the death of Eric Skollingsberg.

\* \* \* \* \* \*

*If the evidence has failed to so establish one or more of said elements then you cannot find the defendant guilty* of Negligent Homicide.

The other significant instruction to be considered in conjunction with the foregoing is instruction No. 15, the part of which is pertinent to the issue involved in this case, included these elements:

Before you can convict the defendant, Johnny Michael Chavez, of the crime of Automobile Homicide you must find from the evidence, beyond a reasonable doubt, all of the following elements of that crime:

\* \* \* \* \* \*

2. That the defendant then and there drove the motor vehicle while *under the influence of intoxicating liquor, to a degree which rendered him incapable of safely driving a vehicle; and,*

3. That the defendant so operated or drove the motor vehicle *in a negligent manner* ; and,

. . . injured Eric Skollingsberg, proximately causing his death, by operating or driving such vehicle while in such intoxicated condition and in a negligent manner.

In considering the effect and applicability of the foregoing instructions, it is also important to have in mind that Section 76–2–101, relied upon by the main opinion, is a general statute relating to crimes generally, whereas Sec. 76–5–207(1) under which the defendant was convicted, is specific as to the crime for which the defendant was convicted.

It provides:

(1) Criminal homicide constitutes automobile homicide if the actor, while under the influence *of intoxicating liquor*, a controlled substance, *or any drug,* to a degree which renders the actor incapable of safely driving a vehicle, causes the death of another by operating a motor vehicle *in a negligent manner.*

The universally accepted rule is that a specific statute takes precedence over a general one.[1] Therefore, the definition of defendant's crime is found in the just-quoted statute.

Attention is called to the fact that this case is but a replay of the cases of *State v. Durrant* and *State v. Wade* referred to in the main opinion, which were 3–2 decisions. In order to avoid repetition and further exposition thereon, I quote from the reasoning and the holding of the *Wade* case as to applicability of the two statutes referred to.

. . . If the two statutes are considered together and each given its intended effect, we see no such conflict. It will be noted that under Sec. 201 an act may be criminal homicide if done "intentionally, knowingly, recklessly or with criminal negligence" in the disjunctive, and therefore does not necessarily require criminal negligence. In the cases referred to we have expressed our opinion that one *who knowingly undertakes to drive a motor vehicle upon a public highway while he is intoxicated is acting recklessly and in disregard of the rights and safety of others* ; [citing cases] and that when this reckless conduct is combined with any negligence which causes the

---

1. 82 C.J.S., Statutes, § 347.

death of another, that constitutes automobile homicide under the provisions of Sec. 207(1) above quoted. We reaffirm that position and reject the urgence on defendant's behalf that those cases should be overruled. [All emphasis herein is added.]

I reaffirm my conviction: that that is a correct statement of the law; that our prior cases should not be overruled; and that if there is to be any such dramatic change, it should be done by the legislature.

In addition to what has been said above, there is a further sound and persuasive reason why there should be no reversal of the jury verdict and judgment in this case. Under the facts set forth in the main opinion: that the defendant's blood showed .19 content of alcohol, (more than twice the .08 required by statute for prima facie intoxication),[2] there can be no question but that the defendant was so drunk that it was extremely dangerous for him to be driving on a public highway. This is plainly evident by the further facts that he wasn't even driving on the travelled portion of the street, but in the gutter, at high speed; that he passed several cars stopped at the intersection for a red light, continued on into that intersection and collided with Mr. Skollingsberg's car which resulted in the death of two-year old Eric Skollingsberg. Even if it should be assumed that there was some technical error in the instructions (with which assumption I do not agree), I cannot believe that there is any likelihood whatsoever that there would have been a different result. That being so, under the mandate of our statute, Sec. 77–42–1, and our well-established decisional law, there should be no reversal for mere technical error.[3]

I would affirm the conviction.

HALL, J., concurs in views expressed in the dissenting opinion of CROCKETT, C. J.

2. Sec. 41–6–44(b) 3, U.C.A. 1953.

3. See *State v. Scandrett*, 24 Utah 2d 202, 468 P.2d 639; and *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.